Syllabus.

# The Chicago, Burlington and Quincy Railroad Company

## v.

## Thomas L. Johnson, Admr.

### *Filed at Ottawa June 21, 1882.*

1. Negligence—*notice to defendant of impending danger.* In an action to recover damages for a personal injury resulting from the alleged negligence of the defendant, the plaintiff having himself contributed to such result by negligence on his part, by placing himself in a situation of danger, if the question arises as to the measure of care it was the duty of the defendant to have observed in case it was in his power to have avoided the consequences of the plaintiff's negligence, then in order to charge the defendant it must be shown he had knowledge of the peril in which the plaintiff had placed himself, or the equivalent of such knowledge, at least long enough before the injury inflicted, to have enabled him to form an intelligent opinion as to how the injury might be avoided, and to apply the means.

2. Same—*contributory and comparative negligence.* To authorize the plaintiff to recover on the ground of the mere negligence, as distinguished from the willful tort, of the defendant, it must appear that the party injured exercised ordinary care, such as a reasonably prudent person will always adopt for the security of his person or property, to avoid the injury complained of. In the absence of ordinary care on the part of the plaintiff, in such case, there is no right of action, and can be no recovery.

3. In applying the rule that the plaintiff may recover in an action for negligence, notwithstanding he has been guilty of contributive negligence, where his negligence is but slight and that of the defendant gross in comparison with each other, it must be understood the terms "slight negligence" and "gross negligence" are used in their legal sense, as defined by common law judges and text writers, and as expressing the extremes of negligence, of which there are no degrees. In giving the definitions of the degrees of negligence, the word "diligence," as used in that connection, is synonymous with "care." So it is said, gross negligence is the want of slight diligence. Slight negligence is the want of great diligence, and intermediate there is ordinary negligence, which is defined to be "the want of ordinary diligence."

4. In applying the measure of slight and gross negligence, however, to the acts of the respective parties charged to have been negligent, it is, of course, to be considered that the term "negligence" is, itself, relative, and its application must depend on the situation of the parties, and the degree of care and vigilance which the circumstances reasonably impose. So that in each case, where there has been contributory negligence on the part of the plaintiff, and he seeks still to recover under the rule in respect to comparative negli-

gence, the question will relate to the measure of care, under the circumstances shown by the evidence to have existed, imposed upon the parties respectively.

5.   In this case, where the plaintiff sought to recover for the death of his intestate, caused by the alleged negligence of the defendant railroad company in the running and management of a locomotive and train of cars on its road, the evidence tending to show contributory negligence on the part of the person killed, the trial court, in undertaking to lay down the rule of comparative negligence, instructed the jury, at the instance of the plaintiff, that although it should appear that the plaintiff's intestate was not exercising ordinary care, yet the plaintiff might recover if the negligence of his intestate was slight and that of defendant was gross in comparison with each other. It was *held*, the rule was not correctly stated, as it can not legally be true that where the person injured fails to exercise ordinary care, and the defendant is guilty of negligence only, the negligence of the person injured is slight and that of the defendant gross in comparison with each other.

6.   EVIDENCE—*opinions of witnesses—as to speed of railway train.*  In an action for personal injury from being run over by a railway train, where the question of the speed of the train is involved, opinions of witnesses may be received as to that fact.

7.   SAME—*as to pecuniary circumstances of parties.*  In a suit to recover damages for the death of a person caused by the alleged negligence of the defendant, it is technically erroneous to admit evidence that the family of the deceased were entirely dependent on his labor for support, though in the particular case the admission of such evidence was not considered as doing any harm.

8.   INSTRUCTION—*attempting to connect discordant propositions.*  The blending of separate and distinct legal propositions in the same sentence or paragraph in an instruction, usually causes error, in that it tends to confuse and mislead, and should be avoided.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Kendall county; the Hon. CHARLES KELLUM, Judge, presiding.

This suit was instituted in the circuit court by Thomas L. Johnson, as administrator of Christian L. Johnson, deceased, against the railroad company, to recover damages for the death of the plaintiff's intestate, occasioned, as is alleged, by the negligence of the company in the management and running of a locomotive and train of cars.   Upon a trial the

plaintiff recovered a judgment for the sum of $1500, from which the defendant appealed to the Appellate Court for the Second District, where the judgment was affirmed. The railroad company thereupon appealed to this court. The principal question presented in the case arises upon certain instructions given at the instance of the plaintiff, relating to the measure of care, under the circumstances shown by the evidence to have existed, imposed upon the respective parties. The defendant company also objected that the trial court permitted witnesses to give their opinions as to the rate of speed at which the train was running when the accident occurred, and that the widow of the deceased was allowed to testify that she and a minor child were entirely dependent on his labor for their support.

Mr. Charles Wheaton, for the appellant:

To warrant a recovery, the party injured must have exercised ordinary care, or the injury must have been wantonly inflicted. *Chicago and Northwestern R. R. Co.* v. *Sweeney*, 52 Ill. 325; *Chicago and Alton R. R. Co.* v. *Gretzner*, 46 id. 74; *Chicago, Burlington and Quincy R. R. Co.* v. *Van Patten*, 64 id. 510; *Illinois Central R. R. Co.* v. *Green*, 81 id. 19; *Chicago, Burlington and Quincy R. R. Co.* v. *Lee*, 68 id. 576; *Illinois Central R. R. Co.* v. *Hetherington*, 83 id. 510; *Chicago, Burlington and Quincy R. R. Co.* v. *Colwell*, 3 Bradw. 548; *Lake Shore and Michigan Southern R. R. Co.* v. *Berlink*, 2 id. 427; *Town of Earlville* v. *Carter*, 2 id. 34.

The running of a train at a rate of speed prohibited by ordinance, raises no presumption the injury was willful or wanton. *Illinois Central R. R. Co.* v. *Hetherington*, 83 Ill. 510; *Artz* v. *Chicago, Rock Island and Pacific R. R. Co.* 34 Iowa, 153; *Railroad Co.* v. *Hunton*, 33 Ind. 335; *Railroad Co.* v. *Houston*, 5 Otto, 697.

Nor does the omission to ring the bell or sound the whistle raise such presumption. *Chicago, Burlington and Quincy*

*R. R. Co.* v. *Lee,* 68 Ill. 576; *Chicago, Rock Island and Pacific R. R. Co.* v. *McKean,* 40 id. 218.

The witnesses who were allowed to testify to the speed of the train were not shown to have been competent to give an opinion. A witness must have some knowledge of that concerning which he gives an opinion. *Cooper* v. *Randall et al.* 59 Ill. 317; *Chicago and Northwestern R. R. Co.* v. *Ingersoll et al.* 65 id. 399.

And it must be shown that he was competent to give an opinion. *Chicago and Alton R. R. Co.* v. *Springfield and Northwestern R. R. Co.* 67 Ill. 142.

The instructions given for the plaintiff do not state the law of comparative negligence correctly, and were calculated to mislead. The fact that proper instructions were given for the defendant will not cure the error in those given for the plaintiff. *Camp Point Manufacturing Co.* v. *Ballou,* 71 Ill. 417; *Ottawa, Oswego and Fox River Valley R. R. Co.* v. *McMath,* 4 Bradw. 356; *Morris* v. *Gleason,* 1 id. 510.

The court erred in admitting evidence that the widow and minor child of the deceased were entirely dependent upon his labor for their support. *Chicago, Rock Island and Pacific R. R. Co.* v. *Henry,* 7 Bradw. 322; *Eagle Packet Co.* v. *Defries,* 94 Ill. 598.

Mr. A. C. Little, and Mr. Randall Cassem, for the appellee:

The defendant was guilty of gross negligence in running its train at a rate of speed prohibited by ordinance, and dangerous to the public safety, at the time and place when it killed the plaintiff's intestate. *Chicago and Alton R. R. Co.* v. *Gregory,* 58 Ill. 256; *Chicago and Alton R. R. Co.* v. *Beacher,* 84 id. 483; *Toledo, Peoria and Warsaw R. R. Co.* v. *Deacon,* 63 id. 91; *Wabash Ry. Co.* v. *Henks,* 91 id. 412.

Any person of ordinary knowledge may testify to his judgment of the speed of a train or vehicle. That is not a ques-

tion for experts.   *Salter* v. *Utica and Black River R. R. Co.* 59
N. Y. 631 ; *Detroit R. R. Co.* v. *Van Steinberg,* 17 Mich. 99.

Facts discernible by judgment or estimate, but not requir-
ing special knowledge or skill, are not regarded as matters of
opinion.    Abbott's Trial Evidence, 587.

Irrespective of any ordinance, it is the duty of a railroad
company to run its trains, while in a city or village, with
reference to public safety, and at such a speed as to have
them under control to avoid injury, and a failure to do so is
gross negligence.   *Wabash Ry. Co.* v. *Henks,* 91 Ill. 412 ;
*Chicago and Alton R. R. Co.* v. *Engle,* 84 id. 399.

Counsel reviewed the evidence to show that plaintiff's
intestate was not guilty of negligence under the circum-
stances, or that it was slight, if any, but contended that
whether or not he was, was a question of fact for the jury,
citing *Grayner* v. *Old Colony and Newport Ry. Co.* 100 Mass.
208 ; *Indianapolis and St. Louis Ry. Co.* v. *Evans,* 86 Ill. 63 ;
*Chicago and Alton R. R. Co.* v. *Pennell,* 94 id. 448.

The jury having found on that question in favor of plain-
tiff, this court should not disturb the finding.   *Illinois Central
R. R. Co.* v. *Benton,* 69 Ill. 174.

No objection was taken on the trial as to the evidence of
the pecuniary circumstances of the widow and child of the
intestate, and it can not be urged in this court.    *Littech* v.
*Mitchell,* 73 Ill. 603 ; *Wickencamp* v. *Mitchell,* 77 id. 92 ;
*Gillespie* v. *Smith,* 29 id. 473.

It was competent and proper to show how much plaintiff's
intestate earned, and that he left a wife and minor child who
shared his income.    *Chicago and Northwestern R. R. Co.* v.
*Moranda, Admx.* 93 Ill. 302.

The injured party guilty of want of ordinary care may still
recover if the carelessness has been gross and his slight in
comparison therewith.    *Chicago and Northwestern Ry. Co.* v.
*Clark,* 70 Ill. 276 ; *East St. Louis Packing and Provision Co.*
v. *Hightower,* 92 id. 139 ; *Chicago, Burlington and Quincy*

*R. R. Co.* v. *Howard*, 90 id. 425; *Village of Kewanee* v. *Depew,* 80 id. 119; *Jacksonville and St. Louis R. R. Co.* v. *Grabble*, 88 id. 242; *Chicago and Northwestern Ry. Co.* v. *Dimick*, 96 id. 42.

The jury are the judges of the relative carelessness. 8 Bradw. 135.

To instruct the jury that if the plaintiff failed to exercise ordinary care he was guilty of gross negligence, and that if injured for want of ordinary care, etc., no action will lie, unless defendants wantonly or willfully, etc., is unsound law. *Stratton* v. *Central City Horse Ry. Co.* 96 Ill. 25.

Mr. Justice Scholfield delivered the opinion of the Court:

The declaration contains two counts. In the first the allegation is general that the defendant negligently drove and managed its locomotive, etc. In the second the negligence alleged is in driving its engine, etc., at a rate of speed prohibited by an ordinance of the town of Plano.

At the time he received the fatal injury, plaintiff's intestate was in the employ of a firm engaged in the manufacture of the "Marsh Harvester," at the shops of the company of that name, at Plano. For the convenience of those in charge of these shops, a switch had been laid on the grounds of the Marsh Harvester Company, connecting with defendant's main track, which was used by those in charge of the shops for unloading materials shipped to the shops, and for loading machines to be shipped from the shops. In one of the buildings used for shops was a saw room, the door of which opened towards this switch, and within ten or twelve feet of it. It was the duty of plaintiff's intestate, in conjunction with several others, to take lumber out of the saw room by that door and across the track to another part of the grounds of the "Harvester" Company. While thus occupied, and as he was passing over this switch with a load of lumber on his shoulder, one of the defendant's trains, which was being backed along the side-track, struck and instantly killed him.

The evidence tended to show that the defendant did the switching for the shops twice a day, at fixed regular hours, which were generally known to the employés in and about the shops; that the plaintiff's intestate had been engaged in the performance of the duties that he then was performing, for several months; that others saw the approaching train and gave him warning, and that, by looking in the proper direction, the train could have been observed in time to have avoided the injury. As to the weight of this evidence, it is not our province to express any opinion. It is sufficient to state there was evidence of this tendency before the jury. There was also a conflict in the evidence as to the rate of speed at which the train was moving,—some evidence tending to show that it was less than that allowed by the ordinance of the town of Plano, and some tending to show that it was greater.

Among other instructions given by the court at the instance of the plaintiff, were the following:

"1.   The jury are instructed that the fact that a municipal corporation by ordinance prohibits the running of engines, locomotives and railway trains at a certain rate of speed, as, per example, six miles an hour, through its corporate territory, does not warrant or license the running of such trains at such rate of speed. It is the duty of those having the management and control of such engines, locomotives and trains, to conform the rate of speed to the safety of the public at all places where such a rate of speed would probably cause the death of individuals or endanger their personal safety. If, therefore, the jury believe, from all the evidence in this cause, that the defendant at the time, and on the said side-track where said Johnson was killed,—if the proof shows that Johnson was killed on the side-track in question,—was running its said train of cars and locomotive at a rate of speed dangerous to the personal safety of those whose right

and privilege it was to cross said side-track, and that by reason of such dangerous rate of speed of said locomotive engine and cars, plaintiff's intestate, who was in the exercise of reasonable prudence and care, was struck, run over and killed by said defendant, the verdict should be for plaintiff, and the jury should so find. But if the jury believe from the evidence that Johnson did not exercise ordinary care, yet that Johnson's negligence was slight and that the negligence of the defendant was gross in comparison with each other, then the plaintiff must recover, and the verdict must be for the plaintiff.

"2. The court instructs the jury that railroad companies in cities and thoroughfares where there are many persons frequently passing over their tracks, are under legal obligations to regard the safety of such persons, and must conduct their trains and regulate their speed with reference to the safety of the public at such places, or be liable for damages resulting from such negligence or willfulness. If, therefore, the jury believe, from all the evidence in this cause, that the said Christian L. Johnson was killed by said defendant, its agents or employés, without negligence on his part, by reason of the rapid and unlawful running of one of its trains, as in plaintiff's declaration charged, the verdict should be for plaintiff. But if, from all the evidence, it should appear that Johnson was not exercising ordinary care, yet the plaintiff may recover if Johnson's negligence was slight and that of defendant was gross in comparison with each other, and the verdict must be for plaintiff.

"3. The jury are instructed that if they believe, from all the evidence in this cause, that at the time of the alleged killing of the said Christian L. Johnson, the said killing took place at and within the corporate limits of the town of Plano, in the county of Kendall, and State of Illinois, and that at said time there was in force a valid ordinance in said incorporated town, prohibiting the running in the corporate

limits of said town at a greater rate of speed than six miles per hour, locomotives, engines and freight trains, and if the jury further believe, from all the evidence in this cause, that at said time and place the defendant was running one of its engines, with cars attached, at a greater rate of speed than was permitted by said ordinance, and that by reason of such unlawful rate of speed, if such speed is shown by the proof, the said Johnson, without fault or negligence on his part, was killed, the verdict of the jury should be for the plaintiff. But if, from all the evidence in this cause, it appears the plaintiff's intestate, Johnson, was not exercising ordinary care, yet the plaintiff may recover, provided the jury believe that Johnson's negligence was slight and the negligence of the defendant gross in comparison with each other, then the verdict must be for plaintiff."

No question arises under these instructions with regard to the measure of care it would have been the duty of the defendant to have observed, if it had been within the power of the defendant to have avoided the consequences of the negligence of the plaintiff's intestate. Such a question would have required proof of knowledge in those in charge of defendant's train, of the peril in which plaintiff's intestate had placed himself, at least long enough before the injury inflicted to have enabled them to have formed an intelligent opinion as to how the injury might be avoided, and apply the means, or the equivalent of such knowledge—of which there is no pretense in this case; and it would, obviously, involve legal principles not necessary to be now discussed. But the question here relates simply to the doctrine of comparative negligence in a case wherein the injured party was a coöperative cause of the injury,—in other words, where his acts directly contributed, in conjunction with the acts of the defendant, to the injury.

The doctrine has been announced, and often reiterated in this court, that in order to authorize the plaintiff to recover

on the ground of the mere negligence, as distinguished from the willful tort, of the defendant, it must appear that the party injured exercised ordinary care, such as a reasonably prudent person will always adopt for the security of his person or property, to avoid the injury complained of. In the *Jacobs case*, 20 Ill. 488, where the doctrine of comparative negligence was first announced, one of the rulings is: "To maintain an action for negligence there must be fault on the part of the defendant, and no want of ordinary care on the part of the plaintiff." And so it was ruled in *Chicago, Burlington and Quincy R. R. Co.* v. *Hazzard*, 26 Ill. 373; *Chicago, Burlington and Quincy R. R. Co.* v. *Dewey, Admx.* id. 255; *Illinois Central R. R. Co.* v. *Simmons*, 38 id. 242; *Chicago and Alton R. R. Co.* v. *Gretzner*, 46 id. 76; *Chicago and Northwestern R. R. Co.* v. *Sweeney*, 52 id. 325; *Chicago, Burlington and Quincy R. R. Co.* v. *Damerell et al.* 81 id. 450; *Chicago, Burlington and Quincy R. R. Co.* v. *Lee*, 68 id. 580. In the case last cited it was said, after stating the rule of comparative negligence: "It is an essential element to the right of action in all cases, the plaintiff, or party injured, must himself exercise ordinary care, such as a reasonably prudent person will always adopt for the security of his person or property. There are and there can be no degrees of gross negligence. The cases all go to the length of holding, where a party has been injured for the want of ordinary care, no action will lie unless the injury is willfully inflicted." See, also, *St. Louis, Alton and Terre Haute R. R. Co.* v. *Manly*, 58 Ill. 300.

These instructions, it is to be borne in mind, relate to the law of negligence, which, according to the generally approved definition of Alderson, B., in *Blyth* v. *Burningham Water Works Co.* 11 Exch. 784, "is the omission to do something which a reasonable man, guided upon those ordinary considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and

reasonable man would not do." See *Railroad Co.* v. *Jones*, 95 U. S. (5 Otto,) 439. Or, according to the more terse definition of this court in *Great Western R. R. Co.* v. *Haworth et al.* 39 Ill. 353 : "The opposite of care and prudence—the omission to use the means reasonably necessary to avoid injury to others." When there is a particular intention to injure, or a degree of willful and wanton recklessness which authorizes the presumption of an intention to injure generally, the act ceases to be merely negligent, and becomes one of violence or fraud. "In negligence there is no purpose to do a wrongful act, or to omit the performance of a duty." *Gardner* v. *Heartt*, 3 Denio, 236. "Negligence, even when gross, is but an omission of duty. It is not designed and intentional mischief, although it may be cogent evidence of such an act." *Towanda R. R. Co.* v. *Munger*, 5 Denio, 267. See, also, Wharton on Negligence, secs. 1, 2, 3.

In holding the plaintiff may recover in an action for negligence, notwithstanding he has been guilty of contributive negligence, where his negligence is but slight and that of the defendant gross in comparison with each other, it must, of course, be understood the terms "slight negligence" and "gross negligence" are used in their legal sense, as defined by common law judges and text writers, for otherwise the terms would convey no idea of a definite legal rule. As defined by those judges and writers, these terms express the extremes of negligence. Beyond gross and slight there are no degrees of negligence. "Gross gross," "grosser gross," and "grossest gross," and "slight slight," "slighter slight," and "slightest slight," are absurd, and, in a legal sense, impossible terms. What is less than slight negligence the law takes no cognizance of as a ground of action, and beyond gross negligence the law, while recognizing there may be liability for a trespass because of a particular intention to do wrong, or of a degree of willful and wanton recklessness which authorizes the presumption of a general intention to

do wrong, recognizes no degree of negligence. The definition of gross negligence itself proves that it is not intended to be, the subject of comparison. It is, "the want of slight diligence." Slight negligence is, "the want of great diligence," and intermediate there is ordinary negligence, which is defined to be "the want of ordinary diligence." Story on Bailments, sec. 17; Shearman & Redfield on Negligence, (2d ed.) secs. 16, 17; Cooley on Torts, 631; *Central Military Tract R. R. Co.* v. *Rockafellow*, 17 Ill. 541.

In applying the measure of slight and gross negligence to the acts of the respective parties charged to have been negligent, it is, of course, always to be held in remembrance that the term "negligence" is, itself, relative, "and its application depends on the situation of the parties, and the degree of care and vigilance which the circumstances reasonably impose." (Cooley on Torts, 630.) The question, therefore, in the present instance, related to the measure of care, under the circumstances shown by the evidence to have existed, imposed upon the respective parties. It was to that measure of care that these instructions related, and if they had related to any other, they would, for that cause alone, have been erroneous.

The word "diligence," as used in the definitions of the degrees of negligence to which we have referred, is synonymous with "care." This is shown by the text in Story, immediately following the definitions quoted. It is there said: "For he who is only less diligent than very careful men, can not be said to be more than slightly inattentive; he who omits ordinary care, is a little more negligent than men ordinarily are; and he who omits even slight diligence, fails in the lowest degree of prudence, and is deemed grossly negligent." It can not, then, legally be true, that where the plaintiff fails to exercise ordinary care, and the defendant is guilty of negligence only, the plaintiff's negligence is slight and that of the defendant gross in comparison with each other.

We have seen, and we repeat, the measure is to be applied with reference to the rights, duties and obligations of the respective parties, under the peculiar circumstances in evidence. Whether, therefore, the plaintiff's intestate failed to exercise ordinary care, is to be determined—and there can be no presumption under these instructions otherwise—with reference to his rights, duties and obligations, and the rights, duties and obligations of the defendant, under the peculiar circumstances here in evidence. Being thus determined that he has failed to exercise ordinary care, the legal conclusion is, he is guilty of ordinary negligence. The utmost degree of negligence, merely,—and it is of this only, and not of trespass or other wrongs, that the instructions speak,—of which the defendant can be guilty, is gross negligence. The plaintiff's negligence, then, by the very terms employed, is ordinary, and that of the defendant gross, in comparison with each other. The language employed, in effect, says, although, as to this particular act, the plaintiff's intestate was guilty of ordinary negligence, and the defendant guilty of gross negligence, still, if the jury believe the plaintiff's intestate's negligence was slight,—that is, that it was not what the very terms employed admit it to have been,—and that of the defendant gross, in comparison with each other, they will find the defendant guilty, etc. Surely it needs no demonstration that if, as to a particular act, the negligence of the plaintiff was ordinary and that of the defendant gross, their relation is not changed by comparing them with each other. The same evidence that determines the one is gross and the other ordinary, fixes their relative degrees with reference to each other.

It seems to be thought what is said in *Stratton* v. *Central City Horse Ry. Co.* 95 Ill. 25, in criticising certain instructions there given, sustains the ruling below in regard to these instructions. This is a misapprehension. In those instructions it was said a failure to exercise ordinary care was gross

negligence, and in one it was said no action would lie if the plaintiff failed to exercise ordinary care, unless the defendant willfully inflicted the injury. We have before herein shown both these positions to be inaccurate. The failure to exercise ordinary care is only ordinary negligence, and although a plaintiff might not exercise ordinary care, yet the defendant would be liable for injuring him if his act causing injury was so willfully and wantonly reckless as to authorize the presumption of an intention to injure generally, notwithstanding he might have had no special intention to injure the plaintiff.

These instructions are clearly erroneous in the respect pointed out, and must necessarily have misled the jury as to the doctrine of comparative negligence. There is in them, moreover, a manifest attempt to connect discordant propositions, which always tends to confusion. Attempts to blend separate and distinct legal propositions in the same sentence or paragraph usually cause error, in that such blending tends to confuse and mislead, and should be avoided.

The objection taken to the admission of evidence with regard to the speed of the train, is not tenable. This is clearly a subject upon which any one is entitled to express an opinion, the jury being presumably able to estimate it for what it was worth. Nor can we say that the evidence of the poverty of the family of the deceased did any harm, although it was technically erroneous to admit it. In a future trial this error can and should be avoided.

For the error in giving the first, second and third of the plaintiff's instructions the judgment is reversed, and the cause remanded.

*Judgment reversed.*

Mr. Justice Dickey: I concur in the judgment rendered in this case. While the evidence tends to charge the defendant with palpable negligence, still, in my judgment, there is no evidence tending to show gross negligence on the part of

defendant, and the turning question in the case in fact seems to be, whether the plaintiff's intestate used ordinary care. In such a case I think it error to submit to the jury the rule of law as to comparative negligence. On this ground the judgment ought to be reversed.

· There is, however, a line of thought in the opinion prepared by Mr. Justice SCHOLFIELD, which I think a departure from the law as laid down by this court ever since the decision of the *Jacobs case,* in 20 Ill.

I do not think that the terms "slight negligence," and "gross negligence," as used in the opinion delivered in the *Jacobs case,* and in the long series of cases which have followed that case, were used in the sense of the definitions quoted from Story, in his treatise on Bailments. That author, in the same work, says: "There are infinite shades of care or diligence, from the *slightest momentary thought,* to the *most vigilant anxiety.* There may be a high degree of diligence, a common degree of diligence, and slight degree of diligence." He defines "ordinary diligence" as "that degree of diligence which men in general exert in respect to their own concerns." He defines "extraordinary diligence" as "that which *very* prudent persons take of their own concerns." And he says "slight diligence" is "that which persons of any prudence at all take of their own concerns." All this is readily understood,—is in harmony with the common meaning of the words used; but when he says, in section 17, that "ordinary negligence" may be defined to be "the want of ordinary diligence," and "slight negligence" to be "the want of great diligence," and "gross negligence" to be "the want of slight diligence," he surely does not give to these phrases the meaning in which they are used in a common or popular sense, or the meaning in which they have generally been used by this court in the *Jacobs case,* and other kindred cases ; nor does he give the meaning which would naturally be adopted by a jury in giving effect to an instruction given by

the court.   Giving the words their popular sense, it would rather seem that ordinary negligence would be such negligence as men of common prudence indulge in, which betokens only the exercise of ordinary care, and not the want of ordinary care, as is suggested.   This, where the law requires only ordinary care, is not negligence at all, for in law negligence is always faulty.   It is the failure in some degree to use that care which the law requires under the circumstances.   In a case where the law demands only the use of ordinary care, and ordinary care is actually exercised, there is in law no negligence whatever.   In such case it is not true that the want of great diligence is in law slight negligence.   In the popular sense of the words, slight negligence is a slight want of the care which the circumstances demand.   A man obviously, therefore, may in such case fail slightly to use ordinary care, and in the popular sense of the words he would be guilty of slight negligence, and only slight negligence, and this, although he did not do all that ordinary care required.   And so of "gross negligence."   Its popular meaning is a very great failure to use the care which the law requires.   It is not essential to gross negligence that there shall be an utter want of care, or, in the language of Story, "the want of" even "slight diligence."   The exercise of slight diligence, where the highest degree of care is by law required, may still leave the party guilty of gross negligence,—that is, guilty of a very great failure to exercise the highest care.

Nor do I concur in the *dicta* which say there are and can be no degrees in gross negligence, and no degrees in slight negligence.   The adjectives "slight," and "gross," seem to me to be capable of comparison, as most adjectives are.   I see no absurdity in saying "gross," "more gross," "most gross," or "gross," "grosser," "grossest," or "slight," "more slight," "slightest."   In fact in the quotation *supra*, from Story, he speaks of "infinite shades of care," from the "*slightest*" momentary thought to the "most vigilant solicitude."

In fact, the imperfection of these definitions of Story leads Cooley, in his work on Torts, page 630, to say of this classification, that it "only indicates that under the special circumstances great care or caution was required, or only ordinary care, or only slight care;" and to add, "if the care demanded was not exercised, the case is one of negligence." The terms "slight negligence," or "moderate negligence," or "gross negligence," do not indicate offences of a different nature, but different degrees in offences of the same nature.

I think, therefore, there may be cases in which it may be legally true that the plaintiff has failed *in some degree* to exercise ordinary care, and that in the same case the defendant has been guilty of gross negligence wherein the plaintiff's negligence may be slight,—that is, may consist of a slight failure to use ordinary care,—and that of the defendant gross in comparison therewith. To my mind the proposition that a plaintiff's negligence is slight, is not incompatible with the proposition that he has failed in some degree to use ordinary diligence.

I pursue this discussion no further here, for the reason that in my judgment the propriety of adopting in this connection Mr. Story's definitions, is a question which does not come in judgment in this case.