Bailey, J. This was an action on the ease brought by Boll in P. Blanchard,- administrator of the estate of John W. Biordan, deceased, against the Lake Shore and Michigan Southern Bailway Company, to recover damages for the death -of the plaintiff’s intestate caused, as is alleged, by the negligence of the servants of the defendant. Biordan, a lad sixteen years of age, was, at the time of his death, working in the employ of the Chicago and Northwestern Bailroad Company, in its freight house or transfer depot, on the west side of Jefferson street, between Sixteenth and Meager streets, Chicago. This freight house stands about thirty or forty feet south of Meager street, and runs from Jefferson street west, about five hundred feet, toward Union street, the next street west. South of this freight house, in the same block, running along Sixteenth street the entire distance from Jefferson to Union street, is a freight house of the Chicago, Burlington and Quincy Bailroad Company, and another freight house of that company stands east of Jefferson street. Bun ning west from the freight house of the Chicago and Northwestern Bailway Company are three tracks, one extending through the center and one along either side of the building, and south of these tracks and nearly parallel therewith, are a large number of tracks of the Chicago, Burlington and Quincy Bailroad Company, there being in all about thirty tracks at the freight houses, of which fifteen run west across Union street, and thirteen across Halsfced street, the street next west of Union. Two of the Chicago, Burlington and Quincy tracks are main tracks, one being used exclusively for trains running east and the other for trains running west. The deceased, at the time of his death, was living with liis parents on Seventeenth street, the next street south of Sixteenth, and a block and a half west of Halsted street. On that day he was working near the west end of the Chicago and Northwestern freight house, and when, at twelve o’clock, the signal for dinner was given, he, with other workmen, went out of the west end of the freight house and walked west along the Chicago and Northwestern tracks to a point about midway between Union and Halsted streets. There he turned south, crossing a number of intervening tracks, until he reached the Chicago, Burlington and Quincy main track, used for trains running west. He then turned west, and proceeded upon and along the track until he reached a point about two feet east of the west line of Halsted street, where he was overtaken by an engine running west, and in stantly killed. The day appears to have been a cold one, with the wind blowing quite strongly from the west. The deceased had on at the time a cap drawn down over his ears, and wras walking rapidly, and it does not appear that he listened or looked behind him for an approaching engine, although there was nothing to obstruct his vision for at least a quarter of a mile along the track. He had been working in the same freight house for three months previously, and seems to have been accustomed to make his way home over substantially the same route, and so must be presumed to have been familiar with the dangers by which it was surrounded. As to all these facts there appears to be no substantial conflict in the evidence. -The conclusion seems to be inevitable, that at and immediately previous to his death, the deceased was not in the exercise of ordinary care. He is shown to have been a lad of more than average activity and intelligence, and in full possession of his senses of sight and hearing. Waiving the question of his negligence in selecting a dangerous route when a safe one along a public street was open to him, it can not be doubted that, when he chose for his pathway to his home the main track of a railway, and that track, too, the one upon which engines and cars would approach him only from behind, it became his duty, in obedience to one of the plainest dictates of ordinary prudence, to keep an outlook for danger in that direction. He placed himself knowingly and voluntarily in a place of great danger, and ordinary prudence required of him a vigilance correspondingly great. It has been held, in numerous cases in this and other States, that it is the duty of a person about to cross a railway track to look and listen to ascertain whether engines or trains are approaching, and if this is so, it is a fortiori his duty to look and listen when he undertakes to walk upon and along a track, thus making use of it as a pathway from one place to another where, as in this case, it appears that engines and trains are very frequently passing. It should also be noticed, as the evidence seems clearly to show, that the deceased was on said track without right, and so was a mere trespasser. The track where he was walking does not appear to have been, in any just sense, a part of the “ depot grounds ” of either of the railroad companies owning the tracks. It was separated from the freight houses by Union street, and was almost a block west of that street, and so was not a place where the public had an implied right to pass and repass in going to and from said freight houses. The deceased, while trespassing upon grounds where he had no right to be, was manifestly held to the exercise of a higher degree of care and vigilance for his own safety than would have been exacted of him if he had been there in the exercise of a legal right. The rule seems to be well established that, to authorize a recovery on the ground of mere negligence, as distinguished from a willful tort of the defendant, it must appear that the party injured exercised ordinary care, such as a reasonably prudent person will adopt for the security of his person or propert)r, to avoid the injury complained of. C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512. That the deceased was not in the exercise of this degree of care seems to be the only inference legitimately and fairly arising from the evidence. In Austin v. C. R. I. & P. R. R. Co., 91 Ill. 35, it is said: “ This court has repeatedly held, that to walk upon the track of a railroad, without looking in both directions to discover approaching engines or trains, when the exercise of such precautions would discover either the one or the other, is such negligence as will preclude a recovery, unless the injury be willfully or wantonly inflicted by the defendant.” The numerous cases cited by the learned justice who delivered the opinion of the court in that case, renders the further citation of authorities on this point unnecessary here. There is no evidence in the record from which the jury could, in our opinion, legitimately find that, the deceased was willfully, intentionally or wantonly killed, and it follows that the verdict of the jury, finding the defendant guilty, is unsupported by the evidence. The only evidence given by the plaintiff tending to identify the engine by which the deceased was killed as an engine belonging to the defendant, is that of two or three witnesses, who noticed on it the letters “ L S. & M. S.,” as it passed. The plaintiff also gave evidence tending to show that the engine was running at the rate of ten miles an hour or perhaps a little more, and that no bell was rung or whistle sounded before reaching the place where the deceased was walking; that after the deceased was killed, the engine apparently slowed up a little, and then went on without stopping. This is all that was shown, as none of the plaintiff’s witnesses seem to have noticed the employes themselves who had charge of the engine, or are able to give any evidence as to" what they were doing. On the part of the defendant it was shown that, on the day and at about the time in question, the employes of the defendant ran a train onto a Chicago, Burlington and Quincy sidetrack, east of the place of the accident, and after detaching their engine from the train, ran it back west over the track where the deceased was killed; that a bell was kept ringing all the time the engine was in motion, and that the engine was not running more than at the rate of five miles an hour; that the employes in charge of the engine saw no one on the track, and were not aware that any person had been injured until some time after they reached their destination. It will thus he seen that, as the defendant’s witnesses did not see the deceased, and as it is not definitely shown that no other engine belonging to the defendant passed west over said track at about the same time, it can not be said with entire certainty that the engine of which the defendant’s witnesses speak, is the one by which the deceased was killed. If it was not the same, the verdict rests solely upon the evidence of the plaintiff’s witnesses, and while their evidence doubtless tends to show negligence, and perhaps gross negligence, it does not show that the killing of the deceased was willful or intentional, or that the defendant’s servants were guilty of such wanton misconduct resulting in his death, as would, in law, be tantamount to a willful tort. If, on the other hand, the engine spoken of by the defendant’s witnesses was the one by which the deceased was killed, then their evidence not only contradicts and repels any imputation of an intentional wrong, but also tends, in some measure, to rebut the charge of negligence. Other questions in the case have been elaborately argued by counsel, but as what we have said fully disposes of the case on this appeal, we do not deem it our duty to consider them, but for the reason that the verdict is unsupported by the evidence, the judgment will be reversed and the cause remanded. Judgment reversed.