## Belt Railway Co. v. Fred Banicki.

1. RAILROADS—*Duty Toward Trespassers.*—A railroad owes no duty toward trespassers upon its grounds except not to wantonly or willfully inflict injury upon them.

2. RECOVERIES—*Under Allegations of Negligence.*—Under an allegation of negligence a recovery may be had upon proof of gross negligence.

Belt Ry. Co. v. Banicki.

But it does not follow that under an allegation of injury arising from negligence a recovery can be had by a trespasser.

3. NEGLIGENCE—*When Gross, is But an Omission of Duty.*—When there is no particular intention to injure. or a degree of willful and wanton recklessness which authorizes the presumption of an intention to injure generally, the act ceases to be merely negligent and becomes one of violence or fraud.

4. SAME—*Degrees of Negligence.*—There are degrees of negligence, as there are degrees of care; but the words slight negligence, ordinary negligence, and gross negligence, are each descriptive of an omission of duty, a neglect without intention to do harm.

5. MASTER AND SERVANT—*Liability of the Master for Acts of the Servant Done Within the General Scope of His Employment.*—The master is, in this State, responsible for acts of his servant done within the general scope of his employment while engaged in his master's business with a view to the furtherance of such business, whether he acts willfully or wantonly; but the master is not liable for acts of his servant not within the scope of his employment.

6. SAME—*Watchmen Employed to Guard Property.*—The mere employment of a watchman to guard property and keep away trespassers does not involve an authority to shoot trespassers and such an authority can not be presumed.

7. INSTRUCTIONS—*In Actions for Injuring Trespassers.*—In an action for personal injuries to a trespasser upon the grounds of a railroad company, an instruction that the master is not responsible for the acts of the servant done outside of his business, and to accomplish some end personal to the servant himself, that the law does not imply any authority from the master to the servant to commit an assault upon a person who is not injuring or threatening to injure the master's property and who is not interfering with the servant's performance of his duty, and if they believe from the evidence that the plaintiff was peaceably leaving the property of the defendant, and was not threatening the defendant's property, nor refusing to go promptly outside its right of way, nor interfering in any way with the performance by the watchman of his duties in the defendant's railroad yard, and that under these circumstances the servant fired the shot that struck the plaintiff, for some purpose of his own, the plaintiff can not recover in this case, and their verdict should be for the defendant, is proper and should be given.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed July 2, 1902.

**Statement.**—This was an action to recover damages occasioned by a bullet wound in the left knee received by

the plaintiff February 15, 1899, while he was in or leaving the defendant's freight yards west of South Chicago. The wound was inflicted by a bullet from a pistol in the hands of the defendant's watchman.

The declaration upon which the case was tried contains six counts; four in case, and two in trespass. The counts in case are predicated upon the alleged negligence of the defendant.

The plaintiff, Banicki, testified that at about 7 o'clock in the morning of February 15, 1899, he left South Chicago with three companions—all Poles—and started for Pullman, about five miles west and south, in search of work. That at a point about half a mile east of Stony Island avenue, he with his three companions left the highway and turned off across the prairie onto the railroad tracks, and, proceeding west upon the north track, had gone a block or two, when Kenney, the watchman in defendant's freight yard, met them. That Kenney asked them what they were doing there. Banicki answered, he " was going to Pullman for a job." Kenney replied, " This is no place to look for a job," and " Get out of this railroad quick;" and at the same time pulled a revolver out of his pocket and pointed it at Banicki's head and said : " Now, you git if you don't want to see this." And Banicki said, " All right, but we can go without you pulling a gun on us. We are no dogs." And then all four started off of the track a little east of north to get outside the right of way, and across the one wire of the fence fifty feet distant. That nothing was afterward said by Kenney or either of the four men, but all continued to walk straight away from Kenney toward the fence until all except Banicki were outside the fence, and Banicki was just stepping over the wire when a pistol shot was heard, and the men turned and saw Kenney still standing on the track with a pistol in his hand. The plaintiff and one companion say he was pointing it toward the men; the other two say that he had it at his side. Banicki felt a pain in his knee, took a step or two and sat down on the ground just outside the fence. Kenney came over and said : " What is

the matter?" and Banicki said: "That is all right; you will find out what is the matter. You know what you have done." Kenney said: "You ain't.shot," and Banicki said: "That is what I am." The plaintiff and his three companions testified that not one of them refused to leave, or said anything to Kenney after he ordered them to leave, or turned back toward him, but that they were all going away from Kenney a little east of north, with their backs toward him, when the shot was fired. Kenney testified that between seven and eight o'clock in the morning, while he was on duty as a watchman in this yard, he saw these four men come across the prairie to the tracks and enter the yard eight or nine blocks to the east and near a long string of cars; that they walked west along the north side of the cars until they came to an opening in the train, and then passed south through the opening and turned west again on the south side of the line of cars. That he walked east until he met them beside some of the cars, and asked them where they were going. That Banicki answered: "None of your God-damned business; we will go where we damn please." That he then ordered them to get out of the yard and they started to do so, going northward, and Banicki continued to talk to Kenney in an abusive manner. That after two of the men had left the right of way through an opening in the fence, the other two, Banicki being the nearer to Kenney, turned around and started toward him, Banicki saying: "You God-damned old —" when Kenney, fearing a personal assault, called to them to halt, and for the first time took his revolver out of his overcoat pocket and fired toward Banicki, but downward, and not at him. There was no other person within sight or hearing. There was a verdict and judgment for plaintiff for $4,200.

Edgar A. Bancroft, attorney for appellant.

Benj. F. Richolson and Carl Stroever, attorneys for appellee.

Mr. Justice Waterman delivered the opinion of the court. Counsel for appellee say:

"Aside from plaintiff, three witnesses whose credibility is not impeached by a single circumstance, testify with practical unanimity to facts from which it appears beyond doubt that the watchman, either by the grossest kind of negligence, amounting to wantonness, or willfully and maliciously, inflicted a serious wound on plaintiff, by shooting him in the knee. It also appears by uncontradicted testimony that it was the watchman's duty to keep out of the yard in which the shooting occurred, people who had no business there."

According to all the evidence appellee was, when injured, a trespasser. Such being the case appellant owed to him no duty except not to wantonly or willfully inflict injury upon him. Ill. Central Ry. Co. v. O'Connor, 189 Ill. 559–564; C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512. That its servant, acting in the line of his duty, did wantonly and willfully injure appellee is the contention of his counsel.

While it is true that under an allegation of negligence a recovery can be had upon proof of gross negligence (C. B. & Q. Ry. v. Carter, 20 Ill. 390; R. R. I. & St. Louis Ry. Co. v. Phillips, 66 Ill. 548) it does not follow that under an allegation of injury resulting from negligence a recovery can be had by a trespasser. C., B. & Q. Ry. Co. v. Johnson, 103 Ill. 512–522.

"In negligence there is no purpose to do a wrongful act, or to omit the performance of a duty." "Negligence, even when gross, is but an omission of duty." "When there is particular intention to injure, or a degree of willful and wanton recklessness which authorizes the presumption of an intention to injure, generally, the act ceases to be merely negligent and becomes one of violence or fraud." C., B. & Q. Ry. Co. v. Johnson, 103 Ill. 512.

There are degrees of negligence, as there are of care, but the words slight negligence, ordinary negligence and gross negligence are each descriptive of an omission, a neglect, without intention to do harm.

Gross and great negligence are relative terms. One is the same as the other and each is descriptive of negligence only. In Wilson v. Brett, 11 M. & W. 113, Lord Cranworth said that gross negligence is ordinary negligence

with a vituperative epithet. See also, Beal v. South Devon Ry. Co., 3 H. & C. 327; Grill v. General Iron Screw Collier Co., L. R. C. P. 1; Steamboat New World v. King, 16 Howard U. S. 469; Austin v. Manchester Ry. Co., 16 Jurist 766.

We think gross or great negligence is something more than ordinary negligence; nevertheless it is a statement of negligence and nothing more.

Appellee, being a trespasser, introduced no evidence warranting a recovery under either of the first four counts of the declaration.

The defendant asked the court to instruct the jury as follows:

"If you believe from the evidence in this case that the plaintiff, after being ordered to leave the premises of the defendant immediately started peaceably to do so, without opposing or resisting the watchman, Kenney, and that the plaintiff continued thus to go toward the fence alongside the defendant's railway, and that just as he neared such fence, or was about to step over the same, the watchman wantonly, without lawful excuse or authority, and merely to satisfy some personal spite, or feeling of anger toward the plaintiff or his companions, fired the pistol toward the plaintiff and inflicted the wound of which the plaintiff complains in this case, and that such act on the part of the watchman was not necessary or proper to the protection of the cars in said yard, nor done in the performance of any duty in that respect, the plaintiff is not entitled to recover in this case, and your verdict should be for the defendant."

This instruction was refused.

A master is liable for the act of his servant done in the course of his employment about his master's business. Wood on Master and Servant, 522.

The master is, in this State, responsible for acts of the servant done within the general scope of his employment, while engaged in his master's business, with a view to the furtherance of that business, whether he acts willfully or wantonly. A master is not liable for acts of his servant not within the scope of his employment. Tuller v. Voght, 13 Ill. 277–285; Oxford v. Peter, 28 Ill. 434; C., M. & St.

P. Ry. Co. v. West, 125 Ill. 320–323; N. C. C. Ry. Co. v. Gastka, 128 Ill. 613–617; C., B. & Q. Ry. Co. v. Casey, 9 Ill. App. 632; Foster et al., Extrs., v. The Essex Bank, 17 Mass. 478–508–510; The Mechanic's Bank v. Bank of Columbia, 5 Wheaton (U. S.), 326; Bolinbroke v. Swindon Local Board, 8 Ad. & Ellis, 512; Bailey v. Manchester Ry. Co., L. R. 7, C. P. 420; Evans' Ewell on Agency, 489, marginal paging; Wood on Master and Servant, 522; 9th Ed. Story on Agency, Sec. 456–456a; Vol. 14, page 818–25, 1st Ed. Am. & Eng. Ency. of Law; Thames Steamboat Co. v. Housatonic Ry. Co., 24 Conn. 40, 53, 54, 56; McCann v. Tillinghast, 140 Mass. 327; Cleveland v. Newson, 45 Mich. 62; Cantrill v. Colwell, New Ed., 40 Tenn. 471; Golden v. Newbrand, 52 Ia. 59.

The mere employment of a watchman to guard property and keep away trespassers does not involve an authority to shoot trespassers; and authority for such shooting can not be presumed.

In the present case there was no evidence either of authority to shoot, or that the defendant knew that the watchman carried firearms.

The shooting of a trespasser who is actually leaving the premises is not within the general or implied authority of a mere watchman.

In Golden v. Newbrand, 52 Iowa, 59, an action against a master for damages, a watchman employed to guard a brewery shot one Golden, who had just thrown a brick into the brewery. Golden was shot while retreating from the brewery. The court said :

" We think the fact that the deceased was retreating from the brewery at the time the fatal shot was fired shows conclusively it was not fired for or with the intent of protecting the brewery or in the line of Roenspir's (the watchman's) duty."

A majority of the court are of the opinion that the following instruction asked by defendant should have been given :

" The court instructs you that the law is that the master

is not responsible for the acts of the servant done outside the master's business, and to accomplish some end personal to the servant himself; that the law does not imply any authority from the master to the servant to commit an assault upon a person who is not injuring or threatening to injure the master's property and who is not interfering with the servant's performance of his duty to the master; and if, in this case, you believe from the evidence that the plaintiff, Banicki, was peaceably leaving the railroad property of the defendant, and was not threatening the defendant's property nor refusing to go promptly outside its right of way, nor interfering in any way with the performance by the watchman of his duties in the defendant's railroad yard, and that under these circumstances Kenney fired the shot that struck the plaintiff for some purpose of his own, the plaintiff can not recover in this case, and your verdict should be for the defendant."

The judgment of the Superior Court is reversed and the cause remanded.