WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY

v.

LAFAYETTE HICKS, Adm'r, etc.

1. RATE of SPEED.—Whether the rate of speed at which the train was running when the collision occurred in this case, was dangerous and negligent, was a question of fact for the jury to determine from the evidence, but their finding must not be without evidence, or so palpably against the evidence as to evince passion or prejudice, or to show that they have been misled and done manifest injustice.

2. NEGLIGENCE—FREIGHT CARS STANDING ON SIDE TRACK.—An instruction was given that it is negligence in a railroad company to permit or suffer cars to stand upon its side tracks so as to materially obstruct the view of approaching trains, by persons about to cross the railroad at a public crossing. Held, that this was error. A railroad company has an undoubted legal right to place its cars on its side tracks, and to allow them to stand there for such time as the exigencies of its business requires. The proper and le-

gitimate use of such side track can not render the company obnoxious to the charge of negligence.

3.  BURDEN OF PROOF—EVIDENCE.—Where the averment of failure to give the statutory warning is affirmatively made by the plaintiff, the burden of proof is upon him to sustain it.   Evidence as to such signals, negative in its character, is not entitled to equal weight with affirmative evidence.

4.  CONTRIBUTORY NEGLIGENCE.—To entitle a plaintiff to recover for mere negligence as distinguished from willful tort of the defendant, it must appear that the injured party was in the exercise of ordinary care, such as reasonably prudent persons will adopt for their safety under similar circumstances.

5.  CROSSING RAILROAD TRACK.—If a traveler on the highway takes the risk of crossing a railroad track without using reasonable care to avoid accident and is injured, he must bear the consequences of his own imprudence.

APPEAL from the Circuit Court of Sangamon county; the Hon. C. S. ZANE, Judge, presiding.    Opinion filed September 21, 1883.

Messrs. GREENE, BURNETT & HUMPHREY, for appellant; that the averment in the declaration that the deceased used due care is material, and the burden is upon plaintiff to prove it, cited I. & St. L. R. R. Co. v. Evans, 88 Ill. 63; W. St. L. & P. R'y Co. v. Schacklett, 105 Ill. 364.

It is the right and duty of the appellate court to review the findings of the jury: C. & R. I. R. R. Co. v. McKean, 40 Ill. 223; Manly's Case, 58 Ill. 309.

As to rate of speed: C. B. & Q. R. R. Co. v. Lee, 68 Ill. 582; P. D. & E. R'y Co. v. Miller, 11 Bradwell, 377; R. R. I. & St. L. R. R. Co. v. Byam, 80 Ill. 530.

It is not negligence to permit freight cars to stand on the side track so as to obstruct the view of approaching trains: Garland v. C. & N. W. R'y Co. 8 Bradwell, 577.

It is the duty of a party about to cross a railroad track to look about him and endeavor to discover if the track is clear: Manly's Case, 58 Ill. 300; Gretzner's Case, 46 Ill. 82; C. B. & Q. R. R. Co. v. Lee, 68 Ill. 582; T. W. & W. R'y Co. v. Jones, 76 Ill. 315; C. B. & Q. R. R. Co. v. Damerell, 81 Ill. 454; I. & St. L. R. R. Co. v. Evans, 88 Ill. 63; C. & N. W. R'y Co. v. Mills, 11 Bradwell, 571; C. & A. R. R. Co. v. Robinson, 8

W., St. L. & P. R'y Co. v. Hicks.

Bradwell, 140; C. & R. I. R. R. Co. v. Still, 19 Ill. 499; I. C. R. R. Co. v. Buckner, 28 Ill. 299; I. C. R. R. Co. v. Goddard, 72 Ill. 567; C. & A. R. R. Co. v. Jacobs, 63 Ill. 178; I. C. R. R. Co. v. Godfrey, 71 Ill. 500; T. P. & W. R'y Co. v. Riley, 47 Ill. 514; C. & R. I. R. R. Co. v. McKean, 40 Ill. 220; C. B. & Q. R. R. Co. v. Notzki, 66 Ill. 455; C. B. & Q. R. R. Co. v. Harwood, 80 Ill. 88; C. B. & Q. R. R. Co. v. Van Patton, 74 Ill. 91; I. C. R. R. Co. v. Hetherington, 83 Ill. 510; L. S. & M. S. R. R. Co. v. Hart, 87 Ill. 529; I. C. R. R. Co. v. Hall, 72 Ill. 222; L. S. & M. S. R. R. Co. v. Berlink, 2 Bradwell, 427; C. & N. W. R. R. Co. v. Hatch, 79 Ill. 137; W. St. L. & P. R'y Co. v. Shacklett, 105 Ill. 364; C. & N. W. R'y Co. v. Sweeney, 52 Ill. 326.

Messrs. PATTEN & HAMILTON, for appellee; as to rate of speed, cited C. & A. R. R. Co. v. Engle, 84 Ill. 397; R. R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 235.

As to the rule of comparative negligence: C. B. & Q. R. R. Co. v. Harwood, 90 Ill. 425; R. R. I. & St. L. R. R. Co. v. Delaney, 82 Ill. 198; Wabash R'y Co. v. Jones, 5 Bradwell, 607; I. C. R. R. Co. v. Hammer, 72 Ill. 347; Quinn v. Donovan, 85 Ill. 194.

Evidence as to the pecuniary condition of deceased was proper: C. & N. W. R'y Co. v. Moranda, 93 Ill. 302.

HIGBEE, J.   This was an action on the case brought by appellee against appellant to recover damages for causing the death of appellee's intestate, through negligence.   A trial was had in the court below, resulting in a verdict and judgment for plaintiff, from which the defendant appeals to this court.

The declaration charges the killing of John T. Lanham, plaintiff's intestate, and injury to his team and wagon by collision at a highway crossing in the village of Buffalo, in Sangamon county, on May 1, 1882.   The negligence charged is in running the train at an improper and dangerous rate of speed, failing to give the statutory signals, and in permitting freight cars to stand on the side track so as to obstruct the view of approaching trains on the main track.

1. As to the rate of speed, it appears from the evidence that appellee's intestate was driving across the track at a street crossing near the depot at the time he was struck and killed, the collision occurring about six o'clock and twenty minutes in the morning, in Buffalo, a small village containing four or five hundred inhabitants, fifteen miles east of Springfield on appellant's line of road, which runs east and west along the north side of the village, not more than one fourth of which lies north of the track. The village is not incorporated, and no ordinance exists regulating the speed of trains through the same. The train was a fast through train from Kansas City to Chicago, known as the "cannon ball," runing on a schedule time of thirty-five miles an hour, making no stops between Springfield and Decatur. The track, in the direction from which the train approached, seems to have been straight for a long distance, with a cut of some ten feet in the deepest part, extending two blocks in length just west of the depot. The train was on time, or within five minutes of it, when it reached the crossing where the collision occurred.

Whether the rate of speed at which the train was running when the collision occurred was dangerous and negligent, was a question of fact for the jury to determine from the evidence; but their finding must not be without evidence, or so palpably against the evidence as to evince passion or prejudice, or to show that they have been misled and done manifest injustice.

In C. B. & Q. R. R. Co. v. Lee, 68 Ill. 582, it was said, "There is nothing in the charter of the company, nor in the general laws of the State which imposes any restraint as to the rate of speed its trains may run. When not prohibited by municipal regulations, it is apprehended the company may adopt such rate of speed as it shall deem advisable, provided always it is reasonably safe to the passengers being transported. It will be subject to no liability for the rate adopted if the company is not otherwise at fault."

But admit that it would be gross negligence to run a train at the rate of speed here adopted through the streets of a

populous city, does this forbid such a rate of speed at the crossing where the collision occurred? In the case of P. D. & E. R. R. Co. v. Miller, 11 Bradwell, 377, we said, " a rate of speed that would be highly dangerous in a populous city, with numerous road crossings, might not be regarded as dangerous in leaving a town after reaching its sparsely settled suburbs.

The speed here adopted, thirty-five miles an hour, is below the speed adopted by many of the leading roads of the country and believed to be reasonably safe when the trains are carefully managed. The train was within five minutes of schedule time, running through the edge of a small village where no stops were made. Its time was well known to the inhabitants of the village and especially to the deceased, whose business had been hauling from the elevator near the crossing where he received his injury. These facts alone fall far short of the proof necessary to sustain the allegation that the train was run at a dangerous and negligent rate of speed.

Again, it does not appear that the death of appellee's intestate was caused by the rate of speed at which the train was running when he received the injury. He drove onto the track with his team when the train was so near him that had it been running at half the rate of speed it was, there is no reason for the belief that the accident would not have happened just as it did.

2. It is charged that appellant was guilty of negligence in permitting its freight cars to stand on its side track so as to obstruct the view of the approaching train from deceased in attempting to cross; and the court entertaining this view of the law, by the third instruction for plaintiff below, informed the jury that it was negligence in a railroad company to permit or suffer cars to stand upon their side tracks so as to materially obstruct the view of approaching trains by persons about to cross the railroad at a public crossing. This question was directly passed upon in Garland v. C. & N. W. R'y Co. 8 Bradwell, 571, where it was said by the learned judge in delivering the opinion of the court, " The defendant had an undoubted legal right to place its cars on its side tracks, and to allow them to stand there for such time as the exigencies of

its business required. That is one of the main purposes for which the tracks are constructed, and their proper and legitimate use can not of itself render the railway company obnoxious to the charge of negligence.

We concur in this view of the law, and are of opinion that the court erred in adopting a contrary view in its instructions to the jury. The mere fact that the cars projected into the street, leaving an opening in the center thereof for travel of from twenty to twenty-five feet, does not render this view of the law any the less applicable to this case.

3. As to the failure to give the statutory signal. The evidence is overwhelming, that the whistle was sounded at the whistling post, eighty rods west of the crossing. Nine witnesses on the part of plaintiff testified that they heard no bell rung. Only one of them, who was at the mill, nearer than any of the others to the whistling post, testifies that *no bell* was rung, and he says no whistle was sounded. It is quite clear that he was mistaken as to the whistle and was equally liable to be as to the ringing of the bell. This evidence is negative in its character, and not entitled to equal weight with affirmative evidence. C. & A. R. R. Co v. Robinson, 106 Ill. 145. On the other hand the engineer, fireman, brakeman and baggageman all swear to the ringing the bell continuously for the required distance.

The averment of failure to ring the bell was affirmatively made by the plaintiff, and the burden of proof was upon him to sustain it. This he failed to do, unless greater weight was given to the negative than to the affirmative evidence. The witnesses were equally honest and truthful, so far as the record shows, there being nothing in it to impeach any of them.

But admit that appellee has established the negligence of appellants in some one or all the particulars charged, the important question remaining to be decided is, was the deceased himself in the exercise of ordinary care for his safety when he drove upon the railroad track and received the injury of which he died.

There is no claim or pretense that the conduct of appel-

lant's servants was willful or wanton in producing the injury. No act of theirs could have saved him after he entered upon the track; an accident was then certain and unavoidable.

Appellee's intestate had been a resident of the village of Buffalo for several years, was a teamster, and in the habit of hauling about the depot and elevator, both of which were at the crossing where he received his injury. On the morning of the accident he started with his team from his residence on the south side of the railroad to go to the elevator on the north side. He was standing up in his wagon; drove first to Carter street, thence north to Elm street, which runs east and west parallel to, and two hundred feet south of the railroad, thence east on Elm four hundred feet to Wells street, thence north on Wells one hundred and fifty or two hundred feet to the railroad crossing, where the accident occurred. The whole distance he drove was six hundred and fifty feet. The train whistled west at the whistling post while he was in Elm street. From this street as well as after he turned into Wells, the view to the railroad was obstructed in places by houses, but there were open spaces through which the track could be seen. Witness Hicks says the wagon made no noise on the soft ground and witnesses Jack, Grubb, Pope and Cook, standing on the ground near the corner of Elm and Wells streets, all heard the noise of the train coming, and Pope saw the smoke from the engine rising over the buildings. Deceased, standing up in his wagon, had a better opportunity to see the train or the smoke than either of these witnesses, and equally as good an opportunity to hear. After deceased turned into Wells street, Pope called to him, " Look out there, that fast train is coming." Cook also called to him. When called to, he was not far from the track, driving toward it. Pope says when he was called to, " he never turned or nothing —horses held the same gait—went jogging along smoking pipe in his mouth—did not check up—had his head down— the train was thirty steps away when I called to him; I heard the whole sound of the train from top of the hill at the whistling post—heard the noise—looked to me half way to Dawson. He looked around when Cook called, but did not stop. I thought he would but he did not."

These facts show negligence on the part of deceased of the grossest character. The place was well known to him to be a very dangerous one, and in proportion to the magnitude of his danger should have been his care. It was his duty before driving onto the track to use his senses of sight and hearing to avoid danger. He knew that the fast train was due, and had he looked and listened for it while in Elm street, or after he turned into Wells street, he could not have failed to learn what every one around him, with far less opportunities for observing, already knew. The declaration avers that the injury was caused without the fault of deceased, and this allegation is material to the right of recovery. The law is, that to entitle the plaintiff to recover for mere negligence, as distinguished from the willful tort of the defendant, it must appear that the injured party was in the exercise of ordinary care, such as reasonably prudent persons will adopt for their safety under similar circumstances: C. B. & Q. R. R. Co. v. Johnson, Adm'r, 103 Ill. 512. Instead of this degree of care by the deceased, he heedlessly and thoughtlessly drove upon the track within one hundred feet of an approaching train, which he knew was then due, running at the rate of thirty-five miles an hour, without looking or listening for it. The servants of appellant in charge of the train could not have seen him until he drove onto the track, when it was impossible to have saved him by any effort of theirs.

It can not be said in view of the evidence in this case that the negligence of deceased was slight and that of appellant gross, as compared with each other. Gross negligence is defined to be " the want of slight diligence." Slight negligence is " the want of great diligence." Can it be truthfully said from the evidence before us that at the time deceased drove onto the crossing where he met his unfortunate death, he was exercising great care or diligence for his safety? If not there can be no recovery in this suit, although the negligence of the servants of appellant may have been gross.

Both had an equal right to pass over the crossing, but it was the duty of each to use reasonable care to avoid accident. The one to give the required signals and the other to look and

listen for an approaching train, and if seen or heard so near as to render the crossing hazardous, to wait until the danger had passed before attempting to cross.

It is the settled doctrine of the Supreme Court of this State, announced in numerous decisions, that if a traveler on the highway takes the risk of crossing without the use of such precautions to avoid danger, and is injured, he must bear the consequences of his own imprudence: C. B. & Q. R. R. Co. v. Damerell, 81 Ill. 464, and cases there cited.

The evidence wholly fails to show that the deceased exercised such a degree of care for his safety as entitles appellee to recover in this action.

Judgment reversed and cause remanded.

Reversed and remanded.