NASHVILLE, CHATTANOOGA & ST. LOUIS RAILROAD CO. *v.*
FANNIE E. WITHERSPOON.

*(Nashville.* December Term, 1903.)

1. **VERDICT.** **Of jury settles conflicting theories.**

Where there is a discrepancy and controversy over the facts,
the supreme court will adopt the theory of the party in whose
favor the jury found and returned the verdict. (*Post, pp.* 131,
132.)

2. **RAILROADS.** **May use right of way for legitimate railroad
purposes; precautions to prevent obstructions from becoming
dangerous.**

A railroad company may use its right of way for any legitimate
railroad purpose, and may place a pile of lumber or other ma-
terial upon it; but, when it does so, it must adopt all precau-
tions necessary to prevent such obstructions from becoming
dangerous. (*Post, pp.* 133-137.)

Cases cited and approved: Cordell v. Railroad, 70 N. Y., 119;
Dillingham v. Parker (Tex.), 16 S. W., 335; Guggenheim v.
Railroad, 33 N. W., 161; Railroads v. Hicks, 13 Ill. App., 407;
Railroad v. Nelson, 59 Ill. App., 308.

3. **SAME.** **Same.** **Obstructing view must use precautions to
prevent accidents.**

If a railroad company obstructs the view, or permits it to be ob-
structed, with piles of lumber near its track, it must, under
such conditions, use such increased care and caution as cir-
cumstances would require to prevent accidents. (*Post, pp.* 133-
134.)

See citations under headnote 2.

4. **SAME.** **Same.** **Same.** **Maxim that one must use his own
property so as not to injure others is not applicable in such
cases.**

The maxim that one is bound to so use his own property as not

Railroad v. Witherspoon.

to hinder others is not applicable to the cases stated in head-
notes two and three, and does not alter or destroy the rules
therein stated.   (*Post, pp.* 135-136.)

5. **SAME. Same. Same.   Obstructions may relieve plaintiff of
contributory negligence, and increase railroad company's care
and vigilance.**

Obstructions placed by a railroad company upon its right of
way so as to obscure the view may relieve the injured party
of contributory negligence in not seeing the approaching train,
and must be considered upon the question of the proper degree
of care and vigilance which the railroad company is bound
to exercise in the running and management of its trains, and in
giving warnings of its approach.   It can not be an independent
ground of recovery.   (*Post, pp.* 136-137.)

See citations under headnote 2.

6. **DAMAGES.   For personal injuries is compensation; charge
leaving amount to jury is erroneous.**

In an action for personal injuries, the plaintiff is entitled to
recover compensation for the injury received and sustained,
and a charge to the jury to "estimate from the proof the amount
of damages plaintiff is entitled to recover" . . . to "assess
the amount of damages plaintiff is entitled to," . . . to
"fix the amount . . . as you believe, from the evidence
and the law, plaintiff is entitled to and at a sum you think right
and proper" . . . is erroneous.   (*Post, pp.* 137-139.)

---

FROM RUTHERFORD.

---

Appeal from the Circuit Court of Rutherford county.
—W. C. HOUSTON, Judge.

112 Tenn—9

CLAUDE WALLER and PALMER & RIDLEY, for Railroad.

RICHARDSON & RICHARDSON and WHITAKER & LYTLE, for Witherspoon.

———

MR JUSTICE WILKES delivered the opinion of the Court.

This is an action for damages for personal injuries. There was a trial before a jury, and a verdict and judgment for $5,500, and the railroad company has appealed and assigned errors.

The facts, so far as necessary to be stated, are that the plaintiff, a young lady, was returning from Murfreesboro to her home, in the country. Her route was along one of the streets of the city which lead into a turnpike road. This route crossed a number of switch tracks of defendant company. Plaintiff was in a buggy, and was driving a horse which was considered safe, gentle, and roadworthy, and was accustomed to trains. In crossing these tracks, the horse became frightened, as is alleged, at an unusual puffing of steam by an engine near the crossing, but concealed from her view. The horse ran away, the buggy was overturned, the plaintiff was thrown out, was rendered temporarily unconscious, and was quite painfully and seriously injured.

It is alleged in the declaration that the company was negligent in permitting obstructions in the shape of piles of lumber upon its right of way, and near to and upon its tracks, which so obstructed the view of plaintiff that

she could not see the switch engine and cars as they were being moved upon the track; that the crossing was unprotected by any gate, guard, or watchman, and that at the time of the injury the engine and cars were being operated negligently and unlawfully, without regard to the safety of the plaintiff or other persons who might be on the highway, and without any proper watch or lookout upon the engine; that the engine negligently emitted and discharged steam, and made unusual noises, calculated to frighten horses; and that in consequence the plaintiff's horse, otherwise gentle, was frightened and caused to run away.

The plaintiff's version of the accident, which, under the finding of the jury, must be taken as correct, states that, as the plaintiff approached the crossing, a switch train passed, going south, and that when it had nearly cleared the road it returned across it to the north, and passed behind some piles of lumber very near the track, and out of her sight. At this crossing there were three tracks which were in use for passing, and one not used, called a "dead track," for holding cars. Plaintiff stopped her horse when about two or three yards from the first track, and waited until the engine, with two freight cars attached, crossed her road, and, turning back, went behind the piles of lumber between the tracks, until lost to sight. She waited until she deemed they had gone a reasonably safe distance, when she started to cross the tracks. When she reached the third track, on which the train was being operated, the engine gave

loud, short, unusual puffs, causing her horse to run down a declivity into a dangerous place, where the buggy was overturned and she was thrown out. There is a discrepancy between the plaintiff and defendant as to the number of cars in the train, the distance the train went after it crossed the road, the length of time consumed before it returned, and other details of less importance. But we adopt the version of plaintiff, inasmuch as the jury have found in her favor. She says the puffs given by the engine were not the ordinary puffs, but were shorter and louder. The witnesses of the company controvert this statement, but in this matter, which is an important feature of the case, we must likewise adopt the plaintiff's version.

It is shown that there was nothing in the grade of the track, or in its condition, or in the make-up of the train, which made it necessary for it to emit any unusual noises. There was no heavily loaded train, there was no steep grade, the track was not slippery, there was nothing to cause a sliding of the wheels, or the emission of any large amount of steam, or the making of any unusual noises. The charge in the declaration is that the engine was negligent in emitting and discharging steam, making an unusual noise calculated to frighten horses, and that it was hidden from view, was very near the crossing, and was managed in such a negligent manner that the plaintiff's horse took fright and ran off. It is charged that the negligence of the defendant was aggravated by the surroundings at the crossing; that there

Railroad v. Witherspoon.

were several tracks to be crossed consecutively; that great piles of lumber were heaped up along or very near the road or street upon the road's right of way, which obstructed the view of persons attempting to cross; that the unusual noises, coming from a hidden source, were calculated to frighten animals; that the outlook or view of the engineers was necessarily obstructed.

Without passing upon the assignments of error seriatim, we consider the eighth assignment of error, which raises the question whether and to what extent a railroad company can place or permit obstructions upon its right of way which cut off the view, and render the running of trains more dangerous than if such obstructions did not exist. Upon this feature of the case the court charged the jury that "it was the duty of the railroad company to use such means as were under its authority and control to prevent any obstruction from being placed at or near its switch tracks that would prevent persons traveling upon the streets or roads from seeing or discovering any danger that would naturally arise from their being suddenly placed in too close proximity to its cars and engine." In the same connection, the court told the jury that this duty applied to obstructions upon the right of way of the company, or territory that belonged to it or was under its control. We think a railroad company may use its right of way for any legitimate railroad purpose, and may place or pile lumber or other material upon it; but, when it does so, it must adopt all precautions necessary to prevent such obstructions from

Railroad v. Witherspoon.

becoming dangerous.   We think the trial judge went too far in his instructions, and the proper charge would have been that, if a railroad did obstruct a view, or permit it to be obstructed, with piles of lumber near its track, it must, under such conditions, use such increased care and caution as the circumstances would require to prevent accidents.

As we understand the charge of the court, the court instructed the jury that the railroad must keep all obstructions off of its right of way which would prevent persons from seeing or discovering dangers that would naturally arise from coming suddenly in too close proximity to the engine and cars.  From this charge we think the jury might have inferred that the railroad company had no right to put or permit any obstructions on its right of way that would shut off the view of passers, whereas the company had the right to use its right of way for the storage of freight or lumber, or for the standing of cars, or for the erection of sheds, station houses, or buildings necessary for its purposes, or in any other legitimate way to forward or accommodate its own business; and the law in such case would impose upon the company such increased care as the surroundings and conditions would make necessary.

In Sherman & Redfield on Negligence (5 Ed.), section 478, it is said:  "The traveler's view of a railroad track is often obstructed by the natural formation of the land, by the growth of trees, by the erection of buildings, by trains standing on side tracks, or by other hindrances,

Railroad v. Witherspoon.

natural or artificial, so that in many cases they cannot see an approaching train in time to avoid it. If such an obstruction is caused by the act of the railroad company, that is not, of itself, independent evidence of negligence, so as to make it liable to one who is injured by its trains, so long as such obstruction consists in the lawful use of the company's own premises, as by piling materials upon its lands, or standing cars upon its side track. An obstruction of view, however caused, may impose upon the company the duty of increased care and watchfulness in running its trains at that point, and of giving more warning signals than are prescribed by statute, and it will often excuse any traveler's conduct which otherwise might be deemed negligent."

In *Cordell, Administratrix,* v. *N. Y. C. & H. R. R. R.* Co., 70 N. Y., 119, 26 Am. Rep., 550, it is said, among other things: "The company has a right to use its own lands for any legitimate purpose in the prosecution of its business. Such a use cannot be said to be unlawful or negligent, although it may obstruct to some extent the view of those who cross the track. A railroad corporation has in this respect the same right as individuals. They are under no legal obligations to refrain from using their property because such use may hinder the view of travelers."

The maxim that one is bound to so use his own property as not to hinder others is not applicable. The injury is remote and incidental, and not within the contemplation of the rule. If it was, the erection of de-

pots, tanks, sheds, and other structures might render them liable to an action, if the jury should find that it was negligent to erect them. I am not aware that any case holds that negligence could be predicated upon the lawful use of the company's property. The obstructions may, and perhaps should, have a material bearing upon two questions: First, as to the contributory negligence of the plaintiff, if they prevented his seeing the approaching train until he arrived at the track, he would not be negligent for not seeing it before; second, the facts and circumstances of these obstructions, with the other surrounding circumstances were proper to be considered upon the question of the proper degree of care and vigilance which the defendant was bound to exercise in the running and management of its trains, and in giving warnings of its approach. It cannot be an independent ground of recovery. No such principle has ever been adjudicated.

In *Dillingham et al.* v. *Parker* (Tex.), 16 S. W., 335, the court said: "There was also evidence to show that there were cars standing upon a side track, near the crossing, in such position as to obstruct not only the view, but also the noise, of the approaching train." It was held that the court improperly charged the jury that it was the duty of those operating railroad locomotives and cars to use reasonable care to not permit the view of the track to become obstructed with cars standing upon the side track, so that persons passing along public roads or streets could not conveniently hear a

passing train or engine as they approached the crossing track, and receivers so operating such railways are liable in damages for injury to any one passing along the road or street by reason of any negligence on the part of their employees in failing to use such reasonable care.

The headnote in *Guggenheim* v. *Lakeshore R. Co.*, 33 N. W., 161, is as follows: "While a railroad company is not guilty of negligence in leaving its freight cars standing upon a side track near a street crossing, yet when they are so placed as to cut off the view of approaching trains, and make it more difficult for persons going over the tracks to see the approach of trains, such placing of cars imposes upon it the additional duty of giving such additional warning as the danger thus increased may require." "We think that the general rule is that a company may place its cars on its side track, and may collect material near its tracks and on it right of way, and keep them there as long as its business may require." *Wabash R. Co.* v. *Hicks,* 13 Ill. App., 407; *Chicago R. Co.* v. *Nelson,* 59 Ill. App., 308. This view we do not understand to be in accord with the view and holding of the learned trial judge, and in his holding we think there is error.

The ninth assignment of error is based upon the following part of the charge of the court: "If you find from the evidence that the plaintiff did receive injury and damage as claimed, by the reckless and unnecessary fault of the defendant, as explained to you in these instructions, then you estimate from the proof the amount

of damages she is entitled to recover, taking into consideration the character and extent of the injury and its probable consequences, the expense of medical attention occasioned by the alleged injury, also the mental pain and physical suffering undergone by her, and from these you will assess the amount of damages she is entitled to; and you will fix the amount of the damages according to these instructions, as you believe, from the evidence and the law, she is entitled to, and at a sum you think right and proper, from the facts of the case, not exceeding the amount claimed in the declaration." The learned trial judge here directs the jury that they must estimate from the proof the amount of damages that plaintiff is entitled to recover. Again, "You will assess the amount of damages she is entitled to;" and again, "You will fix the amount according to these instructions, as you believe from the evidence and the law, she is entitled to, and at a sum you think right and proper, from the facts of the case, not exceeding the amount claimed in the declaration."

The real basis of damages in a case like this is compensation for the injury sustained, but the trial judge does not state this principle, but tells the jury more than once that they are to give the plaintiff what, in their opinion, she is entitled to, or what they, in their opinion, think right and proper in the case. He should have explained to the jury what was right and proper, and that what she was entitled to was compensation for the injuries she had sustained. The jury should have been told that

Railroad v. Witherspoon.

they could give to the plaintiff compensation for her injuries, and not what the plaintiff was entitled to, nor what the jury may think right and proper. What the jury may think the plaintiff entitled to may not be what the law says she is entitled to, and what the jury may think right and proper is not necessarily what the law says is the real damages. The learned trial judge nowhere states that the amount or limit to which the plaintiff was entitled to recover was compensation for the injuries received, which is the proper measure of damages. It is true, he gives the elements upon which compensatory damages are based, and this, to a well-trained legal mind, might have been sufficient to indicate that only compensation should be given; but the language used does not properly convey any idea of compensation, but, rather, an idea that the jury might give what they deemed plaintiff entitled to, and what they deemed right and proper from the facts of the case, not exceeding the amount alleged in the declaration, but without any other limit or guide.

We are of the opinion that there is error in the action of the trial judge upon the two features referred to, and they are material features in the case, and the cause must therefore be reversed and remanded for a new trial. Appellee will pay the costs of the appeal.