## A. J. AYCOCK et al. v. NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COMPANY.

Middle Section.   February 5, 1927.

Petition for Certiorari denied by Supreme Court, July 15, 1927.

1. **Explosives. Blasting. Liability for damages.**

In Tennessee the showing of negligence is not essential to the liability of a party using the dangerous agency of powerful explosives in such way that the proximate results thereof cause injuries to the property of another, although the injuries resulted from concussion and vibration of the earth and air without a physical invasion of the injured property.

2. **Explosives. Defendant held liable for property damaged by explosion on defendant's property.**

In an action against a railroad company to recover damages to plaintiff's property where the damages consisted of broken windows and shaken buildings caused by explosion on defendant's property defendant held liable although there had been no physical invasion of the plaintiff's property.

3. **Damages. Where the elements of damage are subject to pecuniary admeasurement there must be evidence as to the amount of the loss.**

Where the elements of damage are such as to be susceptible of pecuniary admeasurement, there can be no recovery of substantial damages in the absence of evidence as to the extent of the pecuniary loss.

4. **Damages. Evidence. Evidence in instant case held sufficient.**

In view of the fact that when considering whether there is evidence to support the amount of damages awarded by the jury the strongest view of plaintiff's evidence will be considered as true, held that the record in the instant case was sufficient to show plaintiff suffered substantial damages and the court was justified in refusing a request for an instruction that the jury could find only nominal damages.

5. **Damages. Measure of damages defined.**

In an action to recover for damages sustained by property wrecked from an explosion, held that the proper measure of damages was the difference in value of the property after the explosion and immediately prior to the explosion.

6. **Damages. The cost of repairing the injuries may or may not be the true measure of damages.**

Where the cost of restoring the premises to the condition they were in immediately prior to being damaged was more than the depreciation in value, then the depreciation in value would be the measure of damages, but if the reasonable cost of repairing the injuries was less then the depreciation in value, the cost of repairing would be the lawful measure of damages.

7. **Damages. A party is liable only for the damages resulting directly from his action.**

In an action to recover damages done to a store and the stock of goods, caused by defendant blasting, where the evidence showed that the goods were damaged by a rain that fell afterwards, held that the plaintiff could not recover for the damage caused by the water because he should have removed his stock to a place of safety.

8. **Explosives. One who uses explosives on his property is liable at his peril for injuries done to property of another.**

One who uses the dangerous agency of powerful explosives on his own property, or on property under his control, in such way as to injure the property of another will not be heard to say that such injury could not have been reasonably anticipated as the probable result of such act. The principle applicable is expressed in the maxim sic utere tuo ut non alienum laedas.

9. **Words and Phrases. Damages defined.**

The word "damages" in legal parlance, means the indemnity recoverable by a person who has sustained an injury either in his person, property, or relative rights, through the act or default of another.

10. **Words and phrases. Nominal damages defined.**

The legal conception of "nominal damages" is those damages which are given when the legal right of a party is infringed but no appreciable loss or injury is suffered.

Appeal in Error from Circuit Court of Marion County; Hon. J. T. Raulston, Judge.

Reversed in part and remanded for assessment of damages.

William Waller, of Nashville, and Darr & Raulston, of Jasper, for plaintiff in error.

Alan S. Kelly, of South Pittsburgh, for defendants in error.

FAW, P. J. Four suits, separately brought by four different plaintiffs against the Nashville, Chattanooga & St. Louis Railway Company, were, by consent, tried together before a jury in the circuit court of Marion county, and the trial resulted in a verdict for the plaintiff in each of the four cases. From judgments on these verdicts the Railway Company prayed an appeal to this court, which was granted by the trial court, and the record recites that "L. R. Darr and S. P. Raulston acknowledged themselves surety on the defendant's appeal bond, and the defendant is allowed thirty days in which to prepare and file its bill of exceptions." The appeal was granted in the manner just stated on June 10, 1925, and the bill of exceptions was filed in due season. On January 18, 1926, the Railway Company filed the record in the office of the clerk of this court for a writ of error, gave the necessary bond, and thereafter filed assignments of error through which it complains of adverse rulings of the trial court on defendant's motion for a new trial and its motion in arrest of judgment.

The four plaintiffs below were A. J. Aycock, S. D. Collins, Mrs. Elizabeth Link and A. G. Smith. They are defendants in error in this court, but, for convenience, we will refer to them as plaintiffs, and to the Railway Company (the plaintiff in error here) as the defendant.

Each of the plaintiffs is the owner of certain real estate, with a building or buildings thereon, situated in or near the town of South Pittsburg in this State, and the plaintiffs sued to recover

damages to their respective buildings and premises resulting from "blasting" done by the agents and servants of the ·defendant. Plaintiff Aycock also sued for injuries to merchandise ·in his storehouse caused by the same blasting.

The suits of Aycock, Collins and Link were instituted in the circuit court, where a declaration was filed by each plaintiff, to which the defendant interposed a plea of not guilty. A. G. Smith brought his suit before a Justice of the Peace of Marion county who gave judgment in favor of plaintiff Smith and against the Railway Company for $106 and costs, from which judgment the defendant appealed to the circuit court, where the case was tried along with the suits of Aycock, Collins and Link as before stated.

The declaration filed by plaintiff Aycock is as follows:

"The plaintiff A. J. Aycock, sues the defendant, Nashville, Chattanooga & St. Louis Railroad, for three thousand dollars ($3,000), as damages, and alleges as his cause of action as follows:

"The plaintiff is the owner of, and in the possession of, and was at the time of the acts of the defendant herein complained of, the following described real estate; situated on the Pike Road near South Pittsburg, in Marion county, Tennessee, and bounded on the north by Cook and Garrett; east by Pike Road and Link; west by City Company and south by Link; on which is located a large two story frame building, the first floor of which is occupied by the plaintiff as a store, and four frame cottages. During the fall of 1923, and particularly on or about December 12, 1923, the defendant was dynamiting and blasting slag rock in what is known as the 'slag pile' on the property of the Tennessee Coal, Iron & Railroad Co., at the old furnace site, near the above-described property of the plaintiff, when, by the great force and concussion from the explosion of dynamite or powder or other explosives by the defendant at its said operation, the plaintiff's store building was rocked, twisted and shaken off its foundation, and a part of the foundation destroyed, causing the building to settle at one end and break in the center; all the window lights in the building were broken out, the frame twisted and broken; the chimney cracked and partially torn down; and the joints in the building, roof and foundation and a retaining wall loosened, twisted· and damaged, and the shelving in the building split, twisted and wrecked, and wall paper broken and torn. Three large show cases were broken up and a large quantity of merchandise, thrown from the shelving to the floor by the force of the said explosions, was broken and destroyed. In each of the three frame cottages, on the said property, all the window lights were broken; the chimneys cracked and partially torn down, and the foundation and joints loosened and cracked by the great force of the explosion set off by the defendant as aforesaid.

"All of which resulted in the damage to the plaintiff in the sum of three thousand dollars ($3,000), and which was caused by the force of the explosions and blasts put off by the defendant in violation of its duty to do no damage to the plaintiff's property in doing so; and for which said damages thus wrongfully done the plaintiff, the defendant is liable. Plaintiff, therefore, sues the defendant for three thosuand dollars ($3,000), as damages, and demands a jury to try the issue, when joined."

The essential nature of the cause of action is the same in each of the four cases, and may be seen from the above-quoted declaration of plaintiff Aycock.

S. D. Collins sued for damages to a frame building which he owned and occupied as a dwelling, and he alleged that, by the force and concussion from defendant's blasting operations, his said dwelling house was twisted, shaken and damaged, the window lights were broken out, the wall paper was broken, torn and destroyed, two chimneys were cracked and partially knocked down, the foundation of the building was broken and cracked, a retaining wall was shaken down, a concrete slab covering the cistern was broken up and the cistern was cracked and broken.

Mrs. Link sued for damages to a frame dwelling house owned and occupied by her. She alleged that, as a result of defendant's blasting operations, her said dwelling was rocked and twisted, the foundation was cracked and partially destroyed, the porch was torn loose from the house, all the window lights were broken out, some of the locks were broken off the doors, the chimney was cracked and partially shaken down, a flue was destroyed, the plastering and wall paper was cracked and broken, the roof, foundation and building were damaged by the breaking and loosening of joints and a retaining wall was shaken down.

Mrs. Link also sued for damages to two cottages, but the trial judge instructed the jury that she was not entitled to recover for injuries to the two cottages, and that phase of the suit of Mrs. Link is now out of the case.

Plaintiff Smith sued for damages to the dwelling house in which he lived and another dwelling house owned by him on the same or adjoining lot. The chief injuries claimed by Smith were to the roofs, windows, doors, foundations, and one flue of his houses.

The verdicts and judgments from which the Railway Company appeals are as follows: A. J. Aycock, $750 (of which $500 is for damages to real estate and $250 for damages to goods); S. D. Collins $300; Elizabeth Link $400, and A. G. Smith $150. Plaintiffs also recovered judgments for all costs of suit against the defendant Railway Company.

Fundamentally, each of the first seven assignments of error depends upon the proposition that defendant is not liable for damages in these cases because there is neither allegation nor proof of physical trespass upon the property of the plaintiffs (such as throwing stones, slag, debris, etc., thereon), nor that the blasting which caused the injuries complained of was negligently done. Upon this proposition of law defendant predicates the first seven assignments of error through which it is asserted that the trial court should have sustained the defendant's motion for peremptory instructions in its favor; that there is no evidence to support the verdicts of the jury; that there is affirmative error in the charge given to the jury; that the trial court erred in refusing to give to the jury certain instructions requested by the defendant, and that the defendant's motion in arrest of judgment, on the ground that no actionable negligence is alleged in the declaration, should have been sustained.

Cases from other jurisdictions, which, if sound, support the defendant's contention above stated, are cited in the brief. The cases thus cited may be found by referring to the case of Bessemer Coal, etc., Co. v. Doak (Ala.), 12 L. R. A. (N. S.), 389, and Note thereto, and Notes in 27 L. R. A. (N. S.), p. 425 et seq., and L. R. A., 1915E, p. 356 et seq.

But there is a divergence of judicial opinion on this question, and since the decision of the case of Gossett v. Southern Railway Company, 115 Tenn., 376, 89 S. W., 737, Tennessee has been classed by annotators and by courts of other States as holding to the doctrine that a showing of negligence is not essential to the liability of a party who uses the dangerous agency of powerful explosives in such way that the proximate result thereof is injury to the property of another, although the injuries result from concussion and vibration of the earth and air, without a physical invasion of the premises of the injured party. See Note, 12 L. R. A. (N. S.), 390; Hickey v. McCabe (R. I.), 27 L. R. A. (N. S.), 425, 430.

And the courts of this State have so interpreted and applied the Gossett case, supra. See opinion of the Court of Civil Appeals by Special Judge Chambliss (now Mr. Justice Chambliss of the Supreme Court) in the case of Pate v. Railway Company, 8 Hig., 335. We regard the question thus raised as settled in this State adversely to the contention of defendant, and the defendant's first seven assignments of error are therefore overruled.

The remaining six assignments of error relate to the subject of the measure of damages, and to the amount of damages awarded by the jury.

There was evidence tending to show that, as a result of the aforesaid blasting operations by the defendant, the property of

the respective plaintiffs was injured in many of the particulars alleged. This is conceded, at least tacitly, by the defendant, but it is insisted for defendant that there is no evidence which will support a verdict on behalf of either of the plaintiffs for anything more than nominal damages. This question was made in the trial court. The defendant's eighth assignment of error is that the court erred in refusing the request of the defendant to charge the jury as follows:

"Gentlemen of the jury, it is the duty of the plaintiffs to prove the amount of their damages with reasonable certainty. In these cases there has been no evidence from which the amount of damage, if any, sustained by the plaintiffs, can be reasonably ascertained.

"I therefore charge you that you may, under the law, award damages only in a nominal sum, such as one dollar, or five dollars, in favor of each of the plaintiffs."

The ninth assignment is that the court erred in refusing to charge the jury as requested by defendant, as follows:

"Gentlemen of the jury, in the case of Aycock versus the Railway I charge you that there is no competent evidence of the amount of damage, if any, to plaintiff's canned goods and other stock of goods, and hence you cannot award him damages therefor, but if any damages at all are awarded they must be confined to the other elements of damage which are claimed in the declaration."

Through its tenth assignment the defendant complains of the refusal of the court to give to the jury, without modification, defendant's Request No. 10, as follows:

"Gentlemen of the jury, in the case of Collins against the Railway there has been some testimony as to alleged injuries to plaintiff's cistern, on account of which said cistern will not hold water. There has, however, been no evidence introduced showing with reasonable certainty the cost of repairing the damage done to said cistern, and I, therefore, charge you that you may award on account of the alleged injuries to said cistern only nominal damages, such as one dollar. The defendant is not liable, under the evidence, for the cost of replastering the whole cistern."

The court read the tenth request above quoted to the jury, but added the following:

"I give you this request, gentlemen of the jury, with this modification—that you award such damages for repairs to the cistern as you find from the proof as would reasonably compensate for the injuries done. I refuse to charge that you may only award nominal damages, such as one dollar. But I do charge that the defendant would not be liable, under the evidence, for the cost of replastering the cistern. In the request I have just given you, I used

the word 'compensate;' I should have used the term 'such damages as would repair the injuries done.' "

The eleventh assignment is that the trial court erred in charging the jury as follows:

"Now, if you find that the defendant is liable, gentlemen of the jury, to any or all of the plaintiffs, then you must assess their damages. Of course you will have to assess the damages, if you allow damages, for each plaintiff, independent of the others. Take Mr. Aycock: If you find that he has sustained damages, as insisted in his case, and you find that he has proven his damages by the greater weight or value of the evidence, then you must determine how much damages you will award him, and fix the amount that you conclude he is entitled to, and in your verdict you state that you find for him and fix the amount in your verdict which you award as the amount of his damages. And the other plaintiffs you will treat in the same manner."

The twelfth assignment is that "the verdicts of the jury are excessive;" and the thirteenth assignment is that "the verdicts are so excessive as to indicate caprice, passion and prejudice on the part of the jury."

It will be observed that we are not now dealing with an action for personal injuries, "in which elements of damage may be considered by the jury without preliminary estimate of the injury in evidence, or any precise legal guide for determining the amount," but we have here actions for injuries to property, in which damages "are fixed by rules of law, and measurable by pecuniary valuation." 2 Sutherland on Damages (4 Ed.), sec. 437.

Where the elements of damage are such as to be susceptible of pecuniary admeasurement, there can be no recovery of substantial damages in the absence of evidence as to the extent of the pecuniary loss. 17 Corpus Juris, pp. 123, 125.

But when considering whether there is evidence to support the amount of damages awarded by the jury, "the strongest legitimate view of plaintiff's evidence will be considered as true." Coleman v. Bennett, 111 Tenn., 705, 714, 69 S. W., 734.

We think there is evidence in the record before us from which it can be seen that each of the plaintiffs suffered substantial damages from the causes set forth in the respective declarations, and that it was, therefore, proper for the court to refuse to charge the jury, as requested by defendant, that, under the evidence, they could not return a verdict in favor of either of the plaintiffs for more than nominal damages.

The charge of the court of which the defendant complains through its eleventh assignment of error, supra, was erroneous, in that, the jury was thereby authorized to award to each plain-

tiff such an amount of damages as it might conclude "he was entitled to," without any rules to guide the jury in the ascertainment of such amount. Railroad v. Witherspoon, 112 Tenn., 128, 137-139, 78 S. W., 1052. The principal charge contained no instructions concerning the assessment of damages, other than as copied into the eleventh assignment of error, supra, which, it is seen, furnished no rules for the measurement of damages.

The above noted omission from the principal charge was partially (but only in part) supplied by giving to the jury instructions requested by the defendant, as follows:

(Request No. 5.) "Gentlemen of the jury, if you find that the buildings alleged to have been damaged were old and in defective condition, and that the cost of restoring them cannot be definitely ascertained or estimated, I charge you that the measure of damages is the difference, if any, between the market value of the buildings before the blasting and their market value after the blasting; and if you find that there was no such difference, your verdict will be for the defendant."

(Request No. 8.) "Gentlemen of the jury, if you find from the evidence that the buildings involved in these cases were in a bad state of repair, or needed repairs to put them in good condition before the blasting operatons by the defendant in the fall of 1923 began, then I charge you that the damages which you may award in these cases can in no event, under the law, be greater than the difference between the cost of putting the various buildings back into repair before the blasting operations in the fall of 1923, and the cost of putting the same buildings in repair after such operations."

(Request No. 11.) "Gentlemen of the jury, I charge you that you may, under the law, award the plaintiffs in these cases only such damages as have been proved with reasonable certainty to have proximately resulted from the blasting operations of defendant company, as distinguished from damages which have resulted from natural depreciation from deterioration, age, water and other cases."

But the fragmentary instructions thus given were calculated to confuse the jury, in the absence of a clear charge upon the general rules which should govern in the assessment of damages under the evidence in these cases.

The major part of the evidence introduced by plaintiffs for the purpose of proving the amount of the pecuniary loss suffered by them was the testimony of the witnesses R. B. Patton, J. W. Emerson and R. Rudin (especially R. B. Patton) tending to show what it would cost to repair the buildings and premises of the plaintiffs; but after the jury had heard the testimony of these witnesses, and

after the close of all the evidence, the court (in the absence of the jury) sustained a motion on behalf of defendant as follows:

"Mr. Waller: The defendant moves the court to strike from the record and exclude from the jury the evidence of Mr. Patton, and all the other witnesses, insofar as this testimony bears upon the cost of putting the buildings back in good condition; for the reason that it is not relevant, on any theory of the case, as a proper measure of damages."

And, upon the return of the jury into court, they were instructed by the court as follows:

"Gentlemen of the jury, I exclude from your consideration, and direct you to disregard, any evidence in the record by Mr. Patton or other experts, or any evidence as to what it would cost to put any of those buildings in question in this case back in good condition, or their original condition. The question we are interested in is the cost of restoring the buildings to the condition they were in immediately before the damage, if they were damaged, by these blasts."

The witness Patton admitted that he was unable to say what it would cost to restore the buildings "to the condition they were in immediately before the damage," and the other witnesses, Emerson and Rudin, testified generally to what, in their opinion, it would cost to repair the damages, and did not attempt to make the distinction which the court made in the instruction to the jury last above-quoted, that is, the distinction between the cost of putting the buildings "back in good condition, or their original condition" and "the cost of restoring the buildings to the condition they were in immediately before the damage." In this state of the record it must have been difficult for the jury to determine how much and what parts of the testimony of the witnesses Patton, Emerson and Rudin they were authorized to consider in making up their verdicts. This emphasizes the importance of an understanding on the part of the jury of the proper measure of damages.

The true rule for measuring the damages which plaintiffs were entitled to recover was the difference between the value of the premises immediately prior to the injury and the value immediately after the injury (in other words, the depreciation in value resulting from the injury inflicted by the defendant), provided, the cost of restoration was more than the depreciation in value; but if the reasonable cost of repairing the injury was less than the depreciation in value, then the cost of repair was the lawful measure of damages. 4 Sutherland on Damages (4 Ed.), sec. 1018, p. 3768; Annotation, 7 A. L. R., pp. 277, 294-298. There is a multitude of adjudged cases in other jurisdictions touching this question, and announcing seemingly variant rules, but when the facts of the

different cases are examined we believe the weight of authority and sound reason supports the rule above stated, and we think it is in harmony with the expressions of our Supreme Court on the general subject. Burke v. Railroad Co., 7 Heisk., 451, 465; Memphis v. Kimbrough, 12 Heisk., 133, 140; Southern Oil Works v. Bickford, 14 Lea, 651, 654; Anderson v. Miller, 96 Tenn., 35, 43, 44, 33 S. W., 615, 31 L. R. A., 604, 54 Am. St. R., 812.

What we have said has been with especial reference to the buildings and other fixtures attached to the realty. There is no basis in the evidence for the verdict in favor of plaintiff Aycock on account of alleged damage to his merchandise, for the reason that the only evidence touching that item of damages is his testimony in which he estimates his damage in that respect at $800 to $900, and his testimony shows that a part of the injury to his goods resulted from the defendant's blasting operations and the remainder resulted from the flooding of his store on the occasion of heavy rains several days after the blasting in question. The defendant was not legally responsible for the damage to Aycock's goods from flooding. It was the duty of plaintiff Aycock to remove his goods to a place of safety and not leave them on the floor of his building until "the rains descended and the floods came," and the defendant's blasting operation was not the proximate cause of the damage which resulted from the flooding of Aycock's store building. The evidence furnishes no basis for an apportionment of the damage to Aycock's merchandise so as to segregate the damage caused by the blasting from that caused by water; hence the verdict of $250 in favor of Aycock for damage to goods must have been reached by mere speculation or guess on the part of the jury, and this method of arriving at a verdict is not permissible. Western Union Telegraph Co. v. Totten, 141 Fed., 533; T. & P. Railway Co. v. Dunn (Texas), 17 S. W., 822; Buckeye Cotton Oil Co. v. Campagna, 146 Tenn., 389, 396, 242 S. W., 646. The trial judge should, therefore, have given to the jury the defendant's requested instruction copied into the ninth assignment of error.

The eleventh assignment of error must also be sustained. As the case must be remanded for another assessment of damages, we express no opinion upon the twelfth and thirteenth assignments through which it is asserted that the verdicts are excessive.

In view of the fact that there is no error in the judgment of the trial court in respect to the question of the liability of the defendant to the several plaintiffs for substantial damages to the real property of the plaintiffs, respectively, the judgments in that respect and to that extent and for costs below, are affirmed.

We think this is a proper case in which to adopt the practice approved and followed in the case of Perkins v. Brown, 132 Tenn.,

294, 300, 177 S. W., 1158, wherein it was held that a reviewing court may, in its discretion, qualify the order of remand so as to restrict the scope of the new trial ordered, and may, in a proper case, limit the retrial in the court below to the single question of the ascertainment of proper damages.

The assessment of damages against the defendant and in favor of the plaintiffs, respectively, by the jury, and the judgments of the court thereon, are set aside, and these causes will be remanded to the circuit court of Marion county for the assessment of damages by a jury under the direction of the court.

The costs of the writ of error will be equally divided, and one-half of same will be adjudged against the defendant Railway Company and the sureties on its bond for the writ of error, and the remaining one-half of same will be adjudged against the plaintiffs.

Crownover and DeWitt, JJ., concur.

## ON PETITION FOR REHEARING.

FAW, P. J. On a former day of the present term an opinion was handed down by this court directing that the judgments of the trial court in respect to the question of the liability of the defendant Railway Company to the several plaintiffs for damages to the real property of the plaintiffs, respectively, and for the costs heretofore accrued in the trial court, be affirmed, but (following the practice approved in the case of Perkins v. Brown, 132 Tenn., 294, 300, 177 S. W., 158) that the assessments of damages by the jury, and the judgments of the court thereon, be set aside and that the four causes brought up in one record under the above style be remanded to the circuit court of Marion county for the assessment of damages by a jury under the direction of the court.

The defendant Railway Company has filed a petition for a rehearing, and in the opening thereof it is said that the sole purpose of the petition is to ask this court "to rule upon certain questions which were not discussed or definitely passed upon in the opinion heretofore entered."

(1) In our former opinion we overruled the first seven assignments of error of the defendant Railway Company for the reason that "a showing of negligence is not essential to the liability of a party who uses the dangerous agency of powerful explosives in such way that the proximate result thereof is injury to the property of another, although the injuries result from concussion and vibration of the earth and air, without a physical invasion of the premises of the injured party."

It is said in the petition that in thus ruling we ignored the contention made through some of the aforesaid seven assignments of error that the injuries to the property of the respective plaintiffs

were not the proximate result of the blasting done by the defendant, unless the injuries could have been foreseen or reasonably anticipated as the probable result of the blasting.

Although not specifically mentioned in our former opinion, this contention was not overlooked in our consideration of the assignments of error. We think that, in making this contention, the defendant's able counsel fail to observe the distinction between proof that an act (such as blasting) was the proximate cause of·injuries to the property of another, and proof that the negligence of the actor was the proximate cause of such injuries.

If it must be proved that an act was negligently done in order to fix liability for resulting injury upon one against whom action is brought, and such negligence appears, it must also appear, as a condition of liability, that such negligence was the proximate cause of the injury, and, unless the injury could have been foreseen or reasonably anticipated as the probable result of the negligent act, such negligence was not, in a legal sense, the proximate cause of the injury.

But if proof of negligence is not essential to defendant's liability for injuries to property which resulted directly and immediately from the blasting done by the defendant, it is not material to inquire whether such injuries could have been foreseen or reasonably anticipated as the probable result of such blasting. It is enough to know that the defendant did the blasting and, as a direct result thereof, the property of the plaintiffs was injured. One who uses the dangerous agency of powerful explosives on his own property, or on property under his control, in such way as to injure the property of another will not be heard to say that such injury could not have been reasonably anticipated as the probable result of such act. The principle applicable is expressed in the maxim, sic utere tuo ut non alienum laedas. In consonance with this maxim, "if a man brings or uses a thing of a dangerous nature on his own land, he must keep it in at his own peril, and is liable for the consequences if it escapes and does injury to his neighbor. . . . It seems but reasonable and just that the neighbor who has brought something on his own property, which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows will be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property." Broom's Legal Maxims, pp. 364, 372.

(2) In our former opinion we held that "the true rule for measuring the damages which plaintiffs were entitled to recover was the difference between the value of the premises immediately prior to the injury and the value immediately after the injury (in

other words, the depreciation in value resulting from the injury inflicted by the defendant), provided the cost of restoration was more than the depreciation in value; but if the reasonable cost of repairing the injury was less than the depreciation in value, then the cost of repair was the lawful measure of damages.''

It is said in the petition that, under the rule just stated, there was no proof in the record upon which the jury could have found a verdict for more than nominal damages; that ''proof of damages is just as much a part of plaintiffs' case as proof of liability;'' that ''if a plaintiff mistakes the measure of damages and offers no evidence which is applicable to the correct measure of damages'' . . . ''the trial judge should instruct the jury to award nominal damages,'' and that ''there was no evidence upon which the jury could have awarded substantial damages if they had been correctly charged by the trial court.''

The contention of the petitioner is that instead of remanding the cases for another assessment of damages by a jury, this court should have rendered a judgment in favor of each of the plaintiffs and against the defendant for nominal damages and costs.

We held in our former opinion that ''there is evidence in the record before us from which it can be seen that each of the plaintiffs suffered substantial damages from the causes set forth in the respective declarations, and that it was, therefore, proper for the court to refuse to charge the jury, as requested by defendant, that, under the evidence, they could not return a verdict in favor of either of the plaintiffs for more than nominal damages.''

The word ''damages,'' where it first appears in the last quotation above, should have been damage—the singular not the plural.

The word ''damages,'' in legal parlance, means the indemnity recoverable by a person who has sustained an injury either in his person, property, or relative rights, through the act or default of another. Collins v. Railroad, 9 Heisk., 841, 850.

In Webster's New International Dictionary (1925) the word ''damage'' is defined as ''loss or detriment due to injury; injury or harm to person, property, or reputation.'' And the plural (damages) is defined as (in law) ''the estimated reparation in money for detriment or injury sustained; compensation or satisfaction imposed by law for a wrong or injury caused by a violation of legal right.''

It is also there said that ''damages are either substantial or nominal, according to whether there has been actual or merely nominal loss.'' See, also, 2 Words and Phrases Judicially Defined (1 Ed.), p. 1812 et seq., for judicial definitions of ''damage'' and ''damages.''

The legal conception of ''nominal damages'' is those damages which are given when the legal right of a party is infringed, but

no appreciable loss or injury is suffered. 5 Words and Phrases, (1 Ed.), p. 4814 et seq.

It is apparent to any person of common knowledge and powers of observation that the plaintiffs necessarily suffered substantial loss, or damage, as the result of injuries to their property such as those inflicted by the blasting done by defendant, as described in the declarations and shown by the proof in these cases; and we cannot agree that, in this situation, we should reduce the plaintiffs judgments to nominal damages rather than remand the cases to the circuit court for an assessment of damages by a jury under proper instructions from the court.

The case of Hurley & Son v. Buchi, 10 Lea, 346, was a suit to recover damages for a breach of a contract for the sale of some "Early Rose" potatoes for seeding purposes. The plaintiff, Buchi, obtained a judgment, and the defendants, Hurley and Son, appealed. The Supreme Court held (1) that the judgment was erroneous, in that, it was based upon an incorrect measure of damages; (2) that the record contained no evidence by which the amount of the damages could be properly measured, and (3) the judgment should be reversed and the case remanded for a new trial. The court said: "The present aspect of this case is such as that a final judgment cannot be rendered, so as to obtain the justice of the case, without evidence as to the relative value of the articles contracted for and those delivered."

(3) We held, in effect, that plaintiff Aycock was not entitled to a judgment for any sum on account of alleged damage to his merchandise, because it was impossible, on the evidence, to segregate the damage to his merchandise caused by defendant's blasting operations from damage caused by water for which defendant was not responsible. It was also clear from the evidence of plaintiff Aycock himself (although not expressly stated in our former opinion) that proof of such segregation was impossible, and we held that Aycock was not entitled to a judgment on account of damage to his merchandise, and that the trial court should have instructed the jury accordingly, as specially requested by defendant.

But we see no reason for the entry of "a judgment for nominal damages in favor of plaintiff Aycock so far as the allegations relating to personal property are concerned," as suggested in the petition. Aycock did not bring a separate suit for damages to his merchandise, nor even insert a count in his declaration separate from the count on the damage to his real property. He brought one suit, in a single count, for injuries to his storehouse and its contents, but failed in his proof with respect to damage to the contents of the storehouse. In this situation, we see no occasion for the entry of a judgment for nominal damages.

(4)  Petitioner is correct in the assumption that the phrase "reasonable cost of repairing the injury," as used in our former opinion, did not include repairs to the building which were needed before the blasting.

With the foregoing explanations and comments, we adhere to our former opinion, and the defendant's petition for a rehearing is denied and dismissed at the cost of the petitioner.

Crownover and DeWitt, JJ., concur.